No:  15-2997

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

JACOB LEWIS,
Plaintiff-Appellee,

vs.

EPIC SYSTEMS CORPORATION,
Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN,

CASE NO. 15-CV-82-BBC

HONORABLE JUDGE BARBARA B. CRABB

---

### BRIEF OF PLAINTIFF-APPELLEE JACOB LEWIS

---

WILLIAM E. PARSONS
DAVID C. ZOELLER
CAITLIN M. MADDEN
KATELYNN M. WILLIAMS
HAWKS QUINDEL, S.C.
222 West Washington Ave., Suite 450
Madison, Wisconsin 53701-2155
(608) 257-0040

DANIEL A. ROTTIER
JASON J. KNUTSON
BREANNE L. SNAPP
HABUSH HABUSH & ROTTIER S.C.
150 East Gilman St., Suite 2000
Madison, Wisconsin 53703
(608) 255-6663


FOR PLAINTIFF-APPELLEE
JACOB LEWIS

No:  15-2997

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

JACOB LEWIS,

       Plaintiff-Appellee,

  vs.

EPIC SYSTEMS CORPORATION,

       Defendant-Appellant.

---

## DISCLOSURE STATEMENT OF PLAINTIFF-APPELLEE

---

Pursuant to 7th Cir. R. 26.1, the undersigned makes the following disclosures:

1.  The full name of the party represented in this case by the attorneys named below is Jacob Lewis.

2.  The following law firm has appeared before the district court and this Court: HAWKS QUINDEL, S.C. by William E. Parsons, David C. Zoeller, Caitlin M. Madden, and Katelynn M. Williams.

Dated at Madison, Wisconsin, this 9th day of December, 2015.

/s/ *Caitlin M. Madden*

**HAWKS QUINDEL, S.C.**
William E. Parsons
wparsons@hq-law.com
David C. Zoeller
dzoeller@hq-law.com
Caitlin M. Madden
cmadden@hq-law.com
Katelynn M. Williams
kwilliams@hq-law.com
222 West Washington Ave., Suite 450
Madison, Wisconsin 53701-2155
Telephone: 608-257-0040
Facsimile: 608-256-0236

**HABUSH HABUSH & ROTTIER S.C.**
Daniel A. Rottier
rottier@habush.com
Jason J. Knutson
jknutson@habush.com
Breanne L. Snapp
bsnapp@habush.com
150 East Gilman St., Suite 2000
Madison, Wisconsin 53703
Telephone: 608-255-6663
Facsimile: 608-255-0745

No:  15-2997

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

JACOB LEWIS,

       Plaintiff-Appellee,

   vs.

EPIC SYSTEMS CORPORATION,

       Defendant-Appellant.

---

## DISCLOSURE STATEMENT OF PLAINTIFF-APPELLEE

---

Pursuant to 7th Cir. R. 26.1, the undersigned makes the following disclosures:

1.  The full name of the party represented in this case by the attorneys named below is Jacob Lewis.

2.  The following law firm has appeared before the district court and this Court: HABUSH HABUSH & ROTTIER, S.C., by Daniel A. Rottier, Jason J. Knutson, and Breanne L. Snapp.

Dated at Madison, Wisconsin, this 9th day of December, 2015.

/s/ *Caitlin M. Madden*
**HAWKS QUINDEL, S.C.**
William E. Parsons
wparsons@hq-law.com
David C. Zoeller
dzoeller@hq-law.com
Caitlin M. Madden
cmadden@hq-law.com
Katelynn M. Williams
kwilliams@hq-law.com
222 West Washington Ave., Suite 450
Madison, Wisconsin 53701-2155
Telephone: 608-257-0040
Facsimile: 608-256-0236

**HABUSH HABUSH & ROTTIER S.C.**
Daniel A. Rottier
rottier@habush.com
Jason J. Knutson
jknutson@habush.com
Breanne L. Snapp
bsnapp@habush.com
150 East Gilman St., Suite 2000
Madison, Wisconsin 53703
Telephone: 608-255-6663
Facsimile: 608-255-0745

## <u>TABLE OF CONTENTS</u>

DISCLOSURE STATEMENTS OF PLAINTIFF-APPELLEE ..................................... i

TABLE OF CONTENTS ............................................................................ v

TABLE OF AUTHORITIES ..................................................................... vii

JURISDICTIONAL STATEMENT ............................................................... 1

STATEMENT OF THE ISSUE .................................................................... 2

STATEMENT OF THE CASE ..................................................................... 3

SUMMARY OF THE ARGUMENT .............................................................. 6

ARGUMENT ....................................................................................... 10

I.   THE RIGHT TO ENGAGE IN COLLECTIVE ACTION FOR MUTUAL AID
     AND PROTECTION IS A SUBSTANTIVE RIGHT PROTECTED BY THE
     NATIONAL LABOR RELATIONS ACT ................................................. 10

     A.   Section 7 Rights to Collective Activity Are Fundamental,
          Substantive Rights Protected by the NLRA and Include an
          Individual's Right to Represent a Group of Employees in a Collective
          Legal Action. ........................................................................ 11

     B.   The Class Waiver Clause in Epic's Agreement Strips Employees of
          the Section 7 Right to Act Collectively for Mutual Aid and
          Protection. ........................................................................... 15

     C.   This Court Must Afford the National Labor Relations Board's
          Interpretation of the NLRA Deference. ....................................... 17

II.  THERE IS NO CONFLICT BETWEEN THE NLRA AND THE FAA;
     THEREFORE, THE COURT MUST GIVE EFFECT TO BOTH STATUTES .. 20

     A.   The Federal Arbitration Act Puts Agreements to Arbitrate on Equal
          Footing with Other Contracts. ................................................. 22

     B.   The FAA Does Not Require Enforcement of Arbitration Agreements
          that Waive Substantive Federal Rights. ...................................... 23

     C.   The Saving Clause of the FAA Specifically Precludes Enforcement of
          a Contract That Waives Substantive Federal Rights. ...................... 27

III. THE NLRA DOES POSSESS THE CONTRARY CONGRESSIONAL
     COMMAND TO OVERRIDE THE FAA ............................................... 31

IV.  THE CASES CITED BY EPIC ARE INAPPOSITE AND UNPERSUASIVE ... 36

     A.   The Fifth Circuit's Decision in *D.R. Horton v. NLRB* Failed To
          Harmonize the NLRA and FAA as Required. ............................... 37

B.    Epic Overstates Holdings of Other Courts on the Question of Whether No-Class Arbitration Provisions Violate Substantive Rights Under the NLRA ............................................................................... 40

V.    IN THE ALTERNATIVE, THIS CASE MUST BE REMANDED TO CONSIDER UNCONSCIONABILITY AND CONTRACT ARGUMENTS ....... 43

CONCLUSION.............................................................................................. 44

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(B) .................................. 45

CERTIFICATE OF SERVICE ........................................................................ 46

## TABLE OF AUTHORITIES

### Cases

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ..................................................... 24

*200 E. 81st Restaurant Corp. d/b/a Beyoglu & Marjan Arsovski*, 362 NLRB No. 152, 2015 WL 4572913 (July 29, 2015) ........................................... 6, 8, 13, 17

*ABF Freight System, Inc. v. NLRB*, 510 U.S. 317 (1994) ................................... 18, 36

*Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441 (M.D.N.C. 2015) ............ 41

*Altex Ready Mixed Concrete Corp. v. NLRB*, 542 F.2d 295 (5th Cir.1976) ......... 6, 12

*American Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) 10, 21, 26, 31

*Appelbaum v. AutoNation Inc.*, No. SACV 13-01927 JVS, 2014 WL 1396585 (C.D. Cal. Apr. 8, 2014) .................................................................................... 40

*AT&T Mobility v. Concepcion,* 563 U.S. 333 (2011) ......................................... passim

*Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) .............................. 35

*Birdsong v. AT&T Corp., No.* C12-6175 TEH, 2013 WL 1120783 (N.D. Cal. Mar. 18, 2013) ............................................................................................................. 40

*Booker v. Robert Half Intern., Inc.*, 413 F.3d 77 (D.C. Cir. 2005) ........................... 24

*Brady v. Nat'l Football League*, 644 F.3d 661 (8th Cir. 2011) ........................... 12, 24

*Brown v. Entertainment Merchants Association*, 131 S. Ct. 2729 (2011) ................. 33

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ................................ 7

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ................................................................................................................. 17, 19

*Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW (SSx), 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014) ............................................................................... 40

*Cilluffo v. Cent. Refrigerated Servs.*, No. EDCV 12-00886 VAP (OPx), 2012 WL 8523507 (C.D. Cal. Sept. 24, 2012) ............................................................. 40

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ......................................... 33

*CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012) ................................... 23, 31

*Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13-2122 CAS CWX, 2013 WL 3233211 (C.D. Cal. June 25, 2013) .............................................................. 40

*D.R. Horton v. NLRB*, 737 F.3d 344 (5th Cir. 2013) ......................................... passim

*Delock v. Securitas Sec. Servs. USA*, Inc., 883 F. Supp. 2d 784 (E.D. Ark. 2012) .... 40

*Dixon v. NBCUniversal Media*, LLC, 947 F. Supp. 2d 390 (S.D.N.Y. 2013) ............ 41

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996) .................................. 30

*Eastex, Inc. v. NLRB*, 437 U.S. 556 (1978) ....................................................... passim

*Fardig v. Hobby Lobby Stores Inc.*, No. SACV 14-561 JVS ANX, 2014 WL 2810025 (C.D. Cal. Aug. 11, 2014) ...................................................................... 40

*Fimby-Christensen v. 24 Hour Fitness USA, Inc.*, No. 5:13-CV-01007-EJD, 2013 WL 6158040 (N.D. Cal. Nov. 22, 2013) ........................................................... 40

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)................ 14, 22, 23, 24

*Green v. Zachry Indus., Inc.*, 36 F. Supp. 3d 669 (W.D. Va. 2014) ........................... 39

*Hadnot v. Bay, Ltd.*, 344 F.3d 474 (5th Cir. 2003) .................................................... 24

*Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008).................. 6, 19, 22

*Harco Trucking, LLC*, 344 NLRB 478, 2005 WL 762110 (2005) .............................. 13

*Herrington v. Waterstone Mortgage Corp.*, No. 11-CV-779-BBC, 2012 WL 1242318 (W.D. Wis. Mar. 16, 2012, *aff'd*, 993 F. Supp. 2d 940, 946 (W.D. Wis. 2014) .......... 5

*Hickey v. Brinker Int'l Payroll Co., L.P.*, No. 1:13-CV-00951-REB-BNB, 2014 WL 622883 (D. Colo. Feb. 18, 2014) ............................................................... 40

*In re D.R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (2012)................ passim

*Indiana Gear Works v. NLRB*, 371 F.2d 273 (7th Cir. 1967)................................... 13

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.*, 534 U.S. 124 (2001) .......... 20

*J.I. Case Co. v. NLRB*, 321 U.S. 332 (1944)....................................................... 16, 25

*Jasso v. Money Mart Express, et. al.*, 879 F. Supp. 2d 1038 (C.D. Cal. 2012) .......... 40

*Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014)................. 42

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982)............................................. passim

*Knight v. Rent-A-Ctr. E., Inc.*, No. CIV.A. 4:13-1734-MGL, 2013 WL 6826963 (D.S.C. Dec. 23, 2013) ...................................................................................... 39

*Kremer v. Chemical Constr. Corp.*, 456 U.S. 461 (1982) ......................................... 21

*Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006) ........................................... 24

*LaVoice v. UBS Fin. Servs., Inc.*, No. 11 CIV. 2308 BSJ JLC, 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012)................................................................................... 41

*Le Madri Rest.*, 331 NLRB 269, 2000 WL 718228 (2000) ....................................... 13

*Leviton Mfg. Co. v. NLRB*, 486 F.2d 686 (1st Cir. 1973) ......................................... 12

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).......... 32

*Lloyd v. J.P. Morgan Chase & Co.*, No. 11 CIV. 9305 LTS, 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013) ................................................................................... 41

*Longnecker v. American Exp. Co.*, 23 F. Supp. 3d 1099 (D. Ariz. 2014) .................. 40

*Lutheran Heritage Village-Livonia*, 343 NLRB No. 75, 2004 WL 2678632 (2004) .. 15

*Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825 (1988) .............. 29

*Marx v. General Revenue Corp.*, 133 S. Ct. 1166 (2013)............................................ 29

*Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996) ........................... 21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)
............................................................................................................................ passim

*Mohave Elec. Coop., Inc. v. NLRB*, 206 F.3d 1183 (D.C. Cir. 2000) .......................... 12

*Morris v. Ernst & Young*, No. 13-16599 (9th Cir. argued Nov. 17, 2015) ................. 42

*Morton v. Mancari*, 417 U.S. 535 (1974) ........................................................ 8, 20, 27

*Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831 (N.D. Cal. May 7,
2012) ............................................................................................................................. 40

*Moss Planing Mill Co.*, 103 NLRB 414, 1953 WL 11064 (1953), *enf'd*, 206 F.2d 557
(4th Cir. 1953) ............................................................................................................ 13

*Murphy Oil USA, Inc. and Sheila M. Hobson*, 361 NLRB No. 72, 2014 WL 5465454
(Oct. 28, 2014) ..................................................................................................... passim

*Murphy Oil USA, Inc. v. NLRB*, No. 14-60800, 2015 WL 6457613 (5th Cir. Oct. 26,
2015) ............................................................................................................................. 37

*National Licorice Co. v. NLRB*, 309 U.S. 350 (1940).................................. 6, 16, 25, 29

*NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822 (1984) ................................. 12, 17, 32

*NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937)................................. 11, 34

*NLRB v. Local Union No. 103*, 434 U.S. 335 (1978)................................................... 18

*NLRB v. Stone*, 125 F.2d 752 (7th Cir. 1942)................................................ 25, 26, 29

*Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070 (E.D. Cal. 2014) ................. 40

*Owen v. Bristol Care, Inc.* 702 F.3d 1050 (8th Cir. 2013).......................................... 40

*Pelton Casteel, Inc. v. NLRB*, 627 F.2d 23 (7th Cir. 1980) .................................. 13, 40

*Pittsburgh & Lake Erie R.R. Co. v. Railway Labor Executives' Ass'n*, 491 U.S. 490
(1989) ........................................................................................................................... 20

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)...................... 28

*Richards v. Ernst & Young, LLP*, 744 F.3d 1072 (9th Cir. 2013) *cert. denied*, 135 S.
Ct. 355 (2014) ....................................................................................................... 41, 42

*Rogers v. Baxter Intern., Inc.*, 521 F.3d 702 (7th Cir. 2008) .................................... 20

*Securities Indus. Ass'n v. Board of Governors of Federal Reserve Sys.*, 468 U.S. 137
(1984) ........................................................................................................................... 21

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ....... 14

*Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987)................................. 31

ix

*Siy v. CashCall, Inc.*, No. 2:13-CV-00953-PAL, 2014 WL 37879 (D. Nev. Jan. 6, 2014) .............................................................................................. 40

*Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984) .......................................... 8, 18

*Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) ........................ 14, 41

*Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2014 WL 10416989 (N.D. Ill. Sept. 26, 2014) ............................................................................................ 39

*Torres v. United Healthcare Servs., Inc.*, 920 F. Supp. 2d 368 (E.D.N.Y. 2013) ...... 41

*Trinity Trucking & Materials Corp.*, 221 NLRB 364, 1975 WL 6428 (1975), *enf'd mem.*, 567 F.2d 391 (7th Cir. 1977) *cert. denied*, 438 U.S. 914 (1978) ................. 13

*Trompler, Inc. v. NLRB*, 338 F.3d 747 (7th Cir. 2003) ........................................ 12, 17

*United Parcel Serv., Inc.*, 252 NLRB 1015, 1980 WL 12506 (1980), *enf'd*, 677 F.2d 421 (6th Cir. 1982) .......................................................................... 13

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995) ... 8, 20, 22

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989) ...................................................................... 22

*Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir. 2014) ......... 41

*Zabelny v. CashCall, Inc.*, No. 2:13-CV-00853-PAL, 2014 WL 67638 (D. Nev. Jan. 8, 2014) .............................................................................................. 40

## Statutes

29 U.S.C. § 157 ................................................................................... passim

29 U.S.C. § 158 ................................................................... 6, 11, 15, 32

29 U.S.C. § 216 ...................................................................................... 14

9 U.S.C. § 2 ......................................................................................... passim

## Other Authorities

*Hearings Before the Comm. on Education and Labor on S. 1958,* 74th Cong., 1st Sess. 1414 (1935) ............................................................................... 34, 35

*Hearings Before the Comm. on Education and Labor on S. 2926,* 73rd Cong., 2nd Sess. 47 (1934) ...................................................................................... 34

## Rules

Fed. R. Civ. P. 23 .................................................................................. 14

## Treatises

III S. Williston*, Williston on Contracts* § 1630 (1920) ......................................... 22, 30

## JURISDICTIONAL STATEMENT

The Appellant's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUE

Whether the United States District Court for the Western District of Wisconsin properly held that Epic Systems Corporation's arbitration agreement, which bars employees from bringing wage claims collectively, is an illegal contract and therefore may be invalidated under the Federal Arbitration Act's saving clause because it interferes with employees' right to act collectively for their mutual aid and protection in violation of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*

## STATEMENT OF THE CASE

On April 2, 2014, Epic Systems Corporation ("Epic") disseminated an arbitration agreement to its employees which explicitly foreclosed their ability to bring a class wage claim in either judicial or arbitral forums ("the Agreement"). (Dkt. #12.2, Short Appendix ("S.A.") 11-13.) Acceptance of this Agreement was a condition of continued employment. The Agreement applies to "covered claims," which it defined as: "any statutory or common law legal claims…alleging the underpayment or overpayment of wages, expenses, loans, reimbursements, bonuses, commissions, advances, or any element of compensation." (S.A. 11.)

The Agreement bans employees from bringing their wage claims collectively or as part of a class:

> Waiver of Class and Collective Claims. I also agree that covered claims will be arbitrated only on an individual basis, and that both Epic and I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding. No party may bring a claim on behalf of other individuals, and any arbitrator hearing my claim may not: (i) combine more than one individual's claim or claims into a single case; (ii) participate in or facilitate notification of others of potential claims; or (iii) arbitrate any form of a class, collective, or representative proceeding.

(S.A. 11.)

The Agreement also includes a clause which states that if the "Waiver of Class and Collective Claims" (hereafter "Class Waiver") is unenforceable, "then any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction." (S.A. 12-13.) Therefore, if a court invalidates the

Class Waiver for any reason, under the terms of the Agreement, Epic requires employees to bring any collective or class claims in court rather than in arbitration.

 Appellee Jacob Lewis ("Lewis"), formerly employed by Epic as a "Technical Writer," filed the instant case on February 10, 2015 on behalf of himself and a similarly-situated class of technical writers. Since the filing of this action, nine additional Technical Writers have filed consents to join the case. Lewis's complaint alleges that Epic deprived Technical Writers of overtime pay in violation of the Fair Labor Standards Act ("FLSA") and Wisconsin law. On April 13, 2015, Epic filed a motion to dismiss Lewis's case and compel individual arbitration, alleging that Lewis is bound by the Agreement and the Class Waiver.

In Lewis's response to Epic's motion to dismiss, Lewis raised three arguments against enforcement of the Agreement. First, the Agreement was unconscionable as it unreasonably favored Epic and did not reflect a meeting of the minds. (S.A. 1.) Second, the Agreement was not supported by consideration because Epic retained the unilateral right to alter or abandon its terms. (S.A. 1.) Finally, the Class Waiver violated the National Labor Relations Act ("NLRA") because it interfered with employees' right to engage in collective legal action for their mutual aid and protection.

On September 11, 2015, the district court found that Epic's Class Waiver violated the NLRA. (S.A. 1-5.) The district court did not rule on Lewis's alternative contract arguments, finding the NLRA violation dispositive. (*Id.*) Following the Court's reasoning in *Herrington v. Waterstone Mortgage Corp.*, No. 11-CV-779-

4

BBC, 2012 WL 1242318, at *6 (W.D. Wis. Mar. 16, 2012, *aff'd*, 993 F. Supp. 2d 940, 946 (W.D. Wis. 2014)), the Class Waiver illegally interfered with Epic's employees' Section 7 rights under the NLRA. (S.A. 1-5.) The district court invalidated the Class Waiver, recognizing the filing of collective and class lawsuits is "concerted activity" protected by Section 7 of the NLRA, and giving "considerable deference" to the National Labor Relations Board's interpretation of the NLRA as protecting the substantive right to engage in such concerted activity. (S.A. 4.) Per the terms of the Agreement, the invalidation of the Class Waiver required this case to be heard in court. Accordingly, the district court enforced these terms and denied Epic's motion to dismiss. Epic filed its notice of appeal the same day.

## SUMMARY OF THE ARGUMENT

This case presents no conflict between the FAA and the NLRA. A contract requiring employees as a condition of employment to waive their substantive right to act collectively for mutual aid and protection is illegal under the NLRA. *See National Licorice Co. v. NLRB*, 309 U.S. 350, 361 (1940); *Murphy Oil USA, Inc. and Sheila M. Hobson*, 361 NLRB No. 72, 2014 WL 5465454, at *3 (Oct. 28, 2014). The express terms of the FAA require the invalidation of such a contract. *See* 9 U.S.C. § 2. The Court can, and must, give effect to both the NLRA and the FAA by refusing to enforce this arbitration agreement.

The NLRA protects employees' right to "engage in…concerted activities for the purpose of…mutual aid or protection" from employer restraint or interference. 29 U.S.C. §§ 157, 158. Both courts and the Board, the agency charged with interpreting and enforcing the NLRA, have declared that an individual employee filing a legal claim on behalf of fellow employees is concerted activity and is therefore a substantive right protected by the NLRA. *See, e.g., Altex Ready Mixed Concrete Corp. v. NLRB*, 542 F.2d 295, 297 (5th Cir.1976); *200 E. 81st Restaurant Corp. d/b/a Beyoglu & Marjan Arsovski*, 362 NLRB No. 152, 2015 WL 4572913, at *1-2 (July 29, 2015).

Congress passed the FAA with the intention of placing agreements to arbitrate disputes on the same legal footing as any other contract and made abundantly clear the limits on a party's power to compel arbitration. *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (citing *Buckeye Check*

6

*Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The FAA states that an agreement to submit to arbitration "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added). As such, under the plain language of the FAA and in line with the congressional purpose of the FAA, contract defenses such as illegality are applicable and may invalidate arbitration agreements, just as they would any other contract.

Epic neither addresses this central issue nor demonstrates an actual conflict between the FAA and the NLRA. Instead, Epic erects and attacks a series of straw men in asking this Court to enforce an illegal contract which compels employees to give up their substantive right to join together in litigation against employers.

Epic first belabors a point irrelevant to the question before this Court by contending that its Agreement is valid and covers the claims at issue in this case. (Appellant's Brief ("Appellant's Br.") 15-19.) This misplaced argument has no bearing on employees' substantive right under the NLRA to bring collective claims and the enforcement of this right consistent with the FAA.

Epic then argues that the lower court improperly deferred to the Board's interpretation of the FAA, grossly misstating the district court's decision. In fact, the lower court deferred only to the Board's interpretation of the NLRA, not the Board's interpretation of the FAA. The Board, acting under the authority granted to it by Congress, has interpreted Section 7 of the NLRA to confer a substantive right on employees to act collectively for their mutual aid and support, and has

determined that this right includes an individual employee filing a collective complaint on behalf of fellow workers. *In re D.R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274, at *2 (2012); *Arsovski*, 2015 WL 4572913, at *1-2. The lower court's deference to this determination is appropriate; courts must defer to the Board's interpretation of the statute it is charged to enforce, but not to the Board's interpretation of other statutes. *See Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 891, 899 (1984). After establishing that the NLRA protects employees' substantive right to collective legal action, the Court must consider whether the agreement to arbitrate impermissibly requires employees to waive a substantive right. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 84-86 (1982). If so, according to the express terms of the FAA and Supreme Court precedent, the agreement to arbitrate is unenforceable, as with any other contract requiring a party to waive a substantive right. *See* 9 U.S.C. § 2; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

According to Epic, however, the FAA creates super contracts which can disable or override generally applicable contract defenses or federal substantive rights. This argument defies the plain language of the FAA's saving clause and ignores the courts' duty to interpret federal statutes in a manner that gives effect to both where possible. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995) (citing *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). The Fifth Circuit's decision in *D.R. Horton, Inc. v. NLRB* failed to read the NLRA and FAA in harmony. *See* 737 F.3d 344 (5th Cir. 2013). Nevertheless, Epic asserts that because

8

many district courts have blindly followed the Fifth Circuit, this Court should too—without bothering to explain why the Fifth Circuit's flawed reasoning is correct. The Fifth Circuit's failure to even *attempt* to give effect to both the NLRA and the FAA flouts decades of jurisprudence requiring courts to interpret statutes in harmony where possible. As such, this Court should not follow the Fifth Circuit's *D.R. Horton* decision.

Epic also leans heavily on the Supreme Court's decision in *AT&T Mobility, LLC v. Concepcion* to ostensibly support its position that courts must enforce *any* agreement to arbitrate that comes across the docket. *See* 563 U.S. 333 (2011). But the facts and legal principles of *Concepcion* differ so greatly from this case as to make the decision inapposite. *Concepcion* concerned California's unconscionability rule which invalidated most agreements to arbitrate and specifically targeted arbitration, a significant factor in the Court's decision. *Id.* at 343. This case concerns a federal statute, the NLRA, and the substantive rights it grants to employees, not judicial application of a state statute. Here, Lewis maintains only that courts must treat agreements to arbitrate like any other contract, the FAA's express purpose. Because courts would invalidate any other contract stripping workers of a substantive right under the NLRA, the Court should not enforce Epic's Agreement, putting it on equal footing with all other contracts.

Unlike *Concepcion*, at stake here is the substantive right of workers to join together to litigate over the circumstances of their employment. The NLRA has faithfully protected this fundamental right since its inception. Epic cannot vaguely

9

invoke a pro-arbitration policy to justify its deprivation of its employees' substantive right and to better its bottom line.[1] This Court must interpret the NLRA and the FAA in harmony, which is necessary given that the FAA's saving clause clearly empowers courts to invalidate arbitration contracts that would be illegal under any other name. This Court should affirm the district court's ruling that Epic's Class Waiver violates the substantive rights of Epic's employees under the NLRA.

## ARGUMENT

I. **THE RIGHT TO ENGAGE IN COLLECTIVE ACTION FOR MUTUAL AID AND PROTECTION IS A SUBSTANTIVE RIGHT PROTECTED BY THE NATIONAL LABOR RELATIONS ACT**

Parties cannot be required to waive statutory rights through an agreement to arbitrate. *See Mitsubishi Motors*, 473 U.S. at 637 (agreements to arbitrate are acceptable "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum"); *American Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310 (2013) (agreement to arbitrate would clearly be invalidated should it "forbid[] the assertion of certain statutory rights."). The NLRA, interpreted and enforced by the Board, protects the substantive right of employees to engage in concerted activities for the purpose of mutual aid and protection. 29 U.S.C. § 157. Legal action on behalf of a class of employees has long been recognized

---

[1] As noted by the New York Times in a recent three-part series, mandatory no-class arbitration clauses have exploded in both the consumer and employment context, limiting the ability of individuals to seek remedies for consumer and employment grievances. *See* Jessica Silver-Greenberg & Robert Geberloff, *Arbitration Everywhere, Stacking the Deck of Justice*, N.Y. Times, Oct. 31, 2015, http://www.nytimes.com/2015/11/01/business/dealbook/arbitration-everywhere-stacking-the-deck-of-justice.html?_r=0.

by the Board and the courts as a protected activity under the NLRA. *See, e.g.*, *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-67 (1978).

Because a contract which requires an individual to waive a substantive right is illegal, the Class Waiver in Epic's Agreement is unenforceable under the saving clause in the FAA allowing contract defenses to invalidate an agreement to arbitrate.

**A. Section 7 Rights to Collective Activity Are Fundamental, Substantive Rights Protected by the NLRA and Include an Individual's Right to Represent a Group of Employees in a Collective Legal Action.**

It is beyond question that the NLRA protects a substantive right to engage in collective legal action. The Board and courts widely recognize this right. In fact, this is the core right of the NLRA, which protects the right of employees to "engage in ...concerted activities for the purpose of...mutual aid or protection." 29 U.S.C. § 157 ("Section 7" rights); *In re D.R. Horton*, 2012 WL 36274, at *7; *Murphy Oil,* 2014 WL 5465454 at *1. The NLRA makes this right legally enforceable; under Section 8 of the NLRA, it is an "unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7]." 29 U.S.C. § 158(a)(1).

Employees' right to engage in concerted activities under Section 7 of the NLRA is a "fundamental right." *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 33 (1937). Courts must broadly interpret the actions that constitute concerted activities under Section 7. *See Eastex*, 437 U.S. at 565-67 (observing that Section 7 is intended to protect "concerted activities" for the broad purpose of "mutual aid or

11

protection," which covers employees seeking "to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship"); *see also NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 835 (1984) (Congress did not intend to limit Section 7 "protection to situations in which an employee's activity and that of his fellow employees combine with one another in any particular way" or "to have this general protection withdrawn in situations in which a single employee, acting alone, participates in an integral aspect of a collective process"); *Trompler, Inc. v. NLRB*, 338 F.3d 747, 748 (7th Cir. 2003).

Both the courts and the Board recognize that employees' filing of a legal complaint including a class or collective action is a "concerted activity" under Section 7 of the NLRA. *See, e.g., Eastex*, 437 U.S. at 565-67 ("concerted activities" for "mutual aid or protection" covers employees' resort to administrative and judicial forums); *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011) ("a lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 of the [NLRA]"); *Altex Ready Mixed Concrete*, 542 F.2d at 297; *Leviton Mfg. Co. v. NLRB*, 486 F.2d 686, 689 (1st Cir. 1973); *Mohave Elec. Coop., Inc. v. NLRB*, 206 F.3d 1183, 1189 (D.C. Cir. 2000); *In re D.R. Horton*, 2012 WL 36274, at *2, *12 (2012) (listing cases and holding that the longstanding "right to engage in collective action—including collective *legal* action—is the core substantive right protected by the NLRA and is the foundation on which the [NLRA] and Federal labor policy rest."); *Harco*

*Trucking, LLC*, 344 NLRB 478, 2005 WL 762110, at *2-3 (2005); *Le Madri Rest.*,
331 NLRB 269, 2000 WL 718228, at *14 (2000); *United Parcel Serv., Inc.*, 252
NLRB 1015, 1980 WL 12506, at *7 (1980), *enf'd*, 677 F.2d 421 (6th Cir. 1982);
*Trinity Trucking & Materials Corp.*, 221 NLRB 364, 1975 WL 6428, at *2 (1975),
*enf'd mem.*, 567 F.2d 391 (7th Cir. 1977) *cert. denied*, 438 U.S. 914 (1978); *Moss
Planing Mill Co.*, 103 NLRB 414, 1953 WL 11064, at *3 (1953) (concerted wage
claim), *enf'd*, 206 F.2d 557 (4th Cir. 1953).

Further, a single employee's filing of a class or collective action on behalf of
others constitutes protected "concerted activity." Individual employees engage in
protected "concerted activities" under Section 7 where "the employee's actions
themselves at least contemplate some group activity." *Pelton Casteel, Inc. v. NLRB*,
627 F.2d 23, 28 (7th Cir. 1980). That is, the individual employee's activity must be
"for the purpose of inducing or preparing for group action to correct a grievance or a
complaint." *Id.* (citing *Indiana Gear Works v. NLRB*, 371 F.2d 273, 276 (7th Cir.
1967)). The Board has explicitly held that a single employee filing an FLSA action
individually and on behalf of similarly situated employees satisfies this
requirement. *See Arsovski*, 2015 WL 4572913, at *1-2 ("this potential to initiate or
to induce or to prepare for group action…collectively seeking legal redress…satisfies
the concert requirement of Section 7.") (internal citations omitted).

At issue in this case is whether Epic's Class Waiver deprives Lewis of his
substantive right to act collectively under the NLRA. While Epic and other courts
considering this issue have focused on whether the collective action mechanism in

13

the FLSA or the class action procedure outlined in Fed. R. Civ. P. 23 are substantive rights, this is *not* the argument Lewis makes here, nor is this the reasoning underlying the district court's decision. Courts have found that federal statutes such as FLSA or ADEA that *allow* collective action procedures do not furnish employees with the substantive right to bring collective claims. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296-97 (2d Cir. 2013). Lewis does not argue that he has a substantive right to act collectively under either the FLSA or Rule 23. Rather, Lewis maintains that Epic's Class Waiver does not just deprive Lewis of a procedural device, it abrogates his *substantive federal statutory right* under Section 7 of the NLRA. The Supreme Court considered the distinction between "procedure" and "substance" in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, determining that the class action mechanism under Fed. R. Civ. P. 23 is a procedural rather than a substantive right. 559 U.S. 393, 406-409 (2010). Where a rule governs only "the manner and means by which the litigants' rights are enforced," it is a procedural right. *Id.* at 407 (internal citations omitted). In contrast to Fed. R. Civ. P. 23 and the collective action mechanism under 29 U.S.C. § 216(b), the right to engage in concerted activity is a substantive right under the NLRA. Therefore, the Court's inquiry is whether the NLRA protects a substantive right to act collectively. A long history of legal precedent and Board decisions supports that such a right exists.

Epic does not dispute that collective legal action is a central substantive right

14

protected by Section 7 of the NLRA. Section 8 of the NLRA prohibits interference with this right. 29 U.S.C. § 158. The text of Epic's Class Waiver clearly prevents employees from collectively filing any action; the Class Waiver bans not only the filing of such actions in court, but also prohibits employees from arbitrating their claims as a class, or grouping their arbitrations in any way. (S.A. 11.) This proscription on collective legal action blatantly interferes with employees' right to act concertedly, a substantive right protected by the NLRA. 29 U.S.C §§ 157, 158.

## B. The Class Waiver Clause in Epic's Agreement Strips Employees of the Section 7 Right to Act Collectively for Mutual Aid and Protection.

An employer-mandated arbitration contract that deprives employees of the Section 7 right to pursue their claims on a class or collective basis violates Section 8(a)(1) of the NLRA, which provides that employers may not "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157…." 29 U.S.C. § 158(a)(1); *Herrington v. Waterstone Mortgage*, 993 F. Supp. 2d 940, 943 (W.D. Wis. 2014). Specifically, to determine whether a workplace rule violates Section 8(a)(1), the first consideration is whether the rule *explicitly* restricts activities protected by Section 7. *Lutheran Heritage Village-Livonia*, 343 NLRB No. 75, 2004 WL 2678632, at *1 (2004). The Board has determined that provisions requiring employees to waive their right to act collectively are explicit restrictions on activity protected by Section 7. Interpreting Section 7 and 8 of the NLRA in tandem, the Board held:

> Just as the substantive right to engage in concerted activity aimed at improving wages, hours or working conditions through litigation or arbitration lies at the core

15

> of the rights protected by Section 7, the prohibition of
> individual agreements imposed on employees as a means
> of requiring that they waive their right to engage in
> protected, concerted activity lies at the core of the
> prohibitions contained in Section 8.

*In re D.R. Horton*, 2012 WL 36274 at *7; *see also Murphy Oil,* 2014 WL 5465454 at

*6 (reaffirming its conclusion in *D.R. Horton* that the filing of collective litigation is

a protected Section 7 right).

Here, Epic failed to acknowledge the Board's reasonable interpretation of the

NLRA as conferring on employees' substantive federal right to collective legal

action. Epic gives short shrift to the unequivocal language of Section 8(a)(1). In fact,

Epic ignores altogether the district court's conclusion that its Agreement violates

that provision by interfering with its employees' right to collective legal action.

Packaging interference with a Section 7 right in the guise of "arbitration" does not

give Epic a pass on complying with the NLRA. *J.I. Case Co. v. NLRB*, 321 U.S. 332,

337 (1944) ("Individual contracts no matter what the circumstances that justify

their execution or what their terms, may not be availed of to defeat or delay the

procedures prescribed by the National Labor Relations Act."). *See also National*

*Licorice Co.*, 309 U.S. at 361 (holding that individual contracts in which employees

"stipulate[] for the renunciation…of rights guaranteed by the [NLRA]" are

unenforceable).

If taking collective legal action is a substantive right under the NLRA, as the

Board and the courts have established, then no contract, even an arbitration

contract, may force an employee to give up that right. Epic's Agreement, via the

16

Class Waiver, prevents its employees from acting collectively for their mutual benefit and thus unlawfully restricts their Section 7 rights. It violates Section 8 of the NLRA and is illegal and unenforceable.

### C. This Court Must Afford the National Labor Relations Board's Interpretation of the NLRA Deference.

Courts must defer to the Board's determination that the NLRA protects the right of employees to bring collective action lawsuits. So too must courts defer to the Board's conclusion that an *individual* employee filing a class or collective lawsuit on behalf of similarly situated employees is engaged in "concerted activities" protected by Section 7. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984); *Arsovski*, 2015 WL 4572913, at *1-2. In particular, where a statute is "silent or ambiguous with respect to the specific issue," the court must defer to the agency's interpretation, if that interpretation is reasonable. *Chevron*, 467 U.S. at 842-44.

The Supreme Court has consistently deferred to the Board's construction of the NLRA, including its interpretation of which actions constitute protected concerted activities. *See City Disposal Sys. Inc.*, 465 U.S. at 829-30 ("we have often reaffirmed that the task of defining the scope of § 7 'is for the Board to perform in the first instance as it considers the wide variety of cases that come before it.'" (citing *Eastex, Inc.*, 437 U.S. 556 at 568)); *see also Trompler, Inc.*, 338 F.3d at 748 (recognizing that "Congress has delegated to the Board the authority to make rules filling gaps" in the NLRA, and that the "lack of definition of protected concerted activities is such a gap"); *ABF Freight System, Inc. v. NLRB*, 510 U.S. 317, 324

(1994); *Sure-Tan*, 467 U.S. at 891; *NLRB v. Local Union No. 103*, 434 U.S. 335, 350 (1978) (giving "considerable deference" to the Board's "defensible construction of the statute"). The Court must defer to the Board's conclusion that an individual employee filing a class or collective action on behalf of other employees is "concerted activity" and a substantive right under the NLRA.

Epic's brief misleadingly fixates on whether the Board's interpretations of the *FAA* should be provided any deference, while ignoring the deference due to the Board's interpretation of the statute it does enforce, the *NLRA*. Epic's assertion that "the Board's *Horton* decision is not entitled to deference by the courts, since the Board purported to assign itself authority that it does not possess in order to interpret the FAA" disingenuously misstates the Board's decision in *In re D.R. Horton*. (Appellant's Br. 31.) In fact, the Board in *In re D.R. Horton* diligently adhered to the letter of the FAA itself (namely, the Section 2 saving clause) and to Supreme Court precedent prohibiting prospective waiver of federal substantive rights. *See In re D.R. Horton*, 2012 WL 36274 at *12. Here, the district court did the same, deferring to the Board's reasonable interpretation of the NLRA as protecting the federal substantive right to collective legal action, and relying on Supreme Court precedent prohibiting the violation of that right in invalidating Epic's Class Waiver. (S.A. 1-5); *see also Herrington*, 993 F. Supp. 2d 940.

Deference to the Board's definition of "concerted activities" does not encroach on the FAA. For example, in *In re D.R. Horton*, the Board held that engaging in collective legal action is a protected Section 7 right under the NLRA. 2012 WL

36274 at *2-3; *see also Eastex*, 437 U.S. at 565-67. As such, the Board determined that a class waiver clause in an arbitration agreement impermissibly restricted employees' Section 7 rights by preventing employees from jointly seeking legal redress through collective action. *In re D.R. Horton*, 2012 WL 36274 at *4. This analysis does not involve interpreting the FAA, only the NLRA.

In making this decision, the Board did not "wholly ignore other and equally important Congressional objectives" (Appellant's Br. 31)—to the contrary, it carefully weighed the requirements of the FAA. The Board explicitly noted that when administering the NLRA, it "must be and is mindful of any conflicts between the terms of policies of the Act and those of other federal statutes," and, if such a conflict exists, it must "undertake a careful accommodation" of both statutes. *In re D.R. Horton*, 2012 WL 36274 at *10. In so doing, the Board noted that the purpose of the FAA is to prevent courts from treating arbitration agreements less favorably from other private contracts. *Id.* at *11; *see also Hall Street Associates,* 552 U.S. at 581. Just as courts would not permit any other private contract to interfere with substantive rights granted by the NLRA, so too must an agreement to arbitrate accommodate those substantive rights. *In re D.R. Horton*, 2012 WL 36274 at *11.

Under *Chevron*, this Court must defer to this reasonable interpretation of the NLRA, as the Board is the agency charged with interpreting it. 467 U.S. at 842-43. Further, this Court can defer to the Board's interpretation of the NLRA without encroaching on the FAA. As described in detail in Part II below, the Board's determination that class waivers violate the NLRA can and must be harmonized

with the FAA, based on Supreme Court precedent and the language of the FAA

itself.

## II. THERE IS NO CONFLICT BETWEEN THE NLRA AND THE FAA; THEREFORE, THE COURT MUST GIVE EFFECT TO BOTH STATUTES

Cases in which the FAA prevails over other state or federal statutes, such as

*Concepcion* and *Italian Colors*, do not relieve the Court of conducting the necessary

analysis to determine if there is indeed a conflict between the statutes at issue here.

The FAA's saving clause, which retains generally applicable contract defenses,

provides grounds for the two federal statutes to be read in harmony. The FAA

cannot be used to overpower a generally applicable contract defense, such as a

contract waiving that which cannot be legally waived under the NLRA.

This Court can and must give effect to both the NLRA and FAA. Epic's brief

self-servingly *assumes* that the FAA and NLRA conflict such that the NLRA must

provide a "contrary congressional command" that overrides the FAA. But this

unfounded assumption puts the cart before the horse: when considering two federal

statutes, a court's first question must be whether they cover the same subject

matter and, if so, whether they conflict. The court is obligated to regard two federal

statutes as capable of co-existence when possible, absent a clearly-expressed

congressional intention to the contrary. *See Vimar Seguros y Reaseguros*, 515 U.S.

at 533 (citing *Morton*, 417 U.S. at 551); *Rogers v. Baxter Intern., Inc.*, 521 F.3d 702,

705 (7th Cir. 2008); *Pittsburgh & Lake Erie R.R. Co. v. Railway Labor Executives'

Ass'n*, 491 U.S. 490, 510 (1989); *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern.,

Inc.*, 534 U.S. 124, 142 (2001); *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S.

367, 380-81 (1996) ("The rarity with which we have discovered implied repeals is due to the relatively stringent standard for such findings, namely, that there be an 'irreconcilable conflict' between the two federal statutes at issue") (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 468 (1982)); *Securities Indus. Ass'n v. Board of Governors of Federal Reserve Sys.*, 468 U.S. 137, 176 (1984) (O'Connor, J., dissenting) (construing one portion of federal law to implicitly override another "is a last resort...and must be avoided where an interpretation of the statutory language is available that is consistent with legislative intent and that shows the conflict to be merely apparent and not real").

Here, the Court can and must give effect to both the NLRA and FAA by upholding the lower court's refusal to send claims to arbitration without the possibility of class arbitration for two reasons. First, under Supreme Court precedent, the FAA does not mandate enforcement of an arbitration agreement "according to its terms" if it operates to waive employees' federal substantive rights. *Italian Colors*, 133 S. Ct. at 2310. The Class Waiver in Epic's Agreement does precisely that by forcing employees as a condition of employment to waive their Section 7 right to bring collective claims addressing the conditions of their work. Second, the FAA's saving clause *affirms* that arbitration contracts are subject to generally applicable contract defenses, such as illegality. *See* 9 U.S.C. § 2. It is a long-established tenet of contracts law that an illegal contract will not be enforced, and illegality may be a contract defense. *See Kaiser,* 455 U.S. at 78-79 ("our cases leave no doubt that illegal promises will not be enforced in cases controlled by the

21

federal law"); III S. Williston, *Williston on Contracts* § 1630, at 2865-66 (1920).

Epic's Class Waiver illegally interferes with employees' rights under the NLRA. As

such, it falls squarely within the FAA's saving clause, because illegality is a

generally applicable contract defense. These independent reasons compel the

conclusion that the NLRA and FAA do not conflict, and that the district court's

decision correctly interpreted the two statutes in harmony.

### A. The Federal Arbitration Act Puts Agreements to Arbitrate on Equal Footing with Other Contracts.

As a preliminary matter, Epic's attempt to put the FAA on a pedestal above

all other laws (and correspondingly its Class Waiver above the substantive rights of

its employees) cannot be squared with the FAA's stated purpose. The FAA was

enacted in 1925 in response to judicial resistance to arbitration, intending to "place

arbitration agreements on equal footing with all other contracts." *Hall Street*, 552

U.S. at 581. The FAA states that agreements to arbitrate "shall be valid,

irrevocable, and enforceable *save upon such grounds as exist at law or in equity for

the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added). The FAA requires

that courts enforce arbitration clauses "the same way they would enforce any other

contractual clause." *Vimar Seguros y Reaseguros*, 515 U.S. at 554 (1995) (Stevens,

J., dissenting) (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland

Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). In other words, courts interpret an

arbitration agreement like any other contract.

Lewis does not dispute that statutory claims may be the subject of an

arbitration agreement. *See Gilmer*, 500 U.S. at 26 (citing cases); *CompuCredit Corp.*

*v. Greenwood*, 132 S. Ct. 665, 670-71 (2012). However, while claims arising under federal statutes may be enforced through arbitration, arbitration agreements cannot be used to circumvent federal statutory rights. *See Mitsubishi Motors*, 473 U.S. at 628 (1985) (noting that even where parties agree to arbitrate a statutory claim, "a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). The Board, in its proper role as the agency tasked with interpreting the NLRA, has determined that the right to act collectively is a substantive right. *See supra Part I.* Nothing in the history of the FAA, or its clear terms, allows Epic or any employer to thwart an individual's substantive rights under the NLRA simply by applying the magic words "arbitration agreement" to an illegal contract.

### B. The FAA Does Not Require Enforcement of Arbitration Agreements that Waive Substantive Federal Rights.

Section 7 rights under the NLRA are fundamental, substantive federal rights—and include the right to bring collective legal action. *See supra* Section I.A; *Herrington*, 993 F. Supp. 2d at 944 (citing *In re D.R. Horton*, 2012 WL 36274, at *12 (internal citations omitted)); *see also Murphy Oil,* 2014 WL 5465454 at *1-*3. Epic's Agreement forces employees to waive this right as a condition of employment. As such, it is unenforceable regardless of any purported pro-arbitration policy.

The Supreme Court has consistently held that the federal policy favoring arbitration contracts must yield where such contracts deprive parties' of substantive statutory rights. *See Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors*, 473 U.S at 628 for the proposition that "'[b]y agreeing to arbitrate a statutory claim, a party

23

does not forgo the substantive rights afforded by the [federal] statute....'"). The question of whether a right is substantive depends not on the FAA, but on the statute creating the right. *See Gilmer*, 500 U.S. at 29 (enforcing arbitration agreement because, although ADEA contained judicial-forum and optional collective-litigation procedure provisions, it was not intended to afford "substantive protection…against waiver of the right to a judicial forum...." (quoting *Mitsubishi*, 473 U.S. at 628)); see also *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 267 n.9, 275 (2009) ("the [Gilmer] Court's fidelity to the ADEA's text" led to its decision that the ADEA permitted waiver of a judicial forum.). Courts will invalidate agreements to arbitrate that interfere with the substantive rights of the parties. *See, e.g., Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) (severing a clause in an arbitration agreement proscribing an award of exemplary and punitive damages, which are available under Title VII); *Booker v. Robert Half Intern., Inc.*, 413 F.3d 77, 83 (D.C. Cir. 2005) (same); *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) (striking a clause that waived the award of treble damages under federal antitrust statutes).

The NLRA guarantees employees a substantive federal right to collective legal action. *See, e.g., Eastex, Inc.*, 437 U.S. at 565-67; *Brady*, 644 F.3d at 673; *In re D.R. Horton*, 2012 WL 36274 at *12. As such, Epic's assertion that the Supreme Court has "considered arbitration of a wide spectrum of claims arising under federal statutes" and enforced the "arbitration agreements according to their terms" (Appellant's Br. 33) is impertinent. In those cases, enforcement of the arbitration

24

contracts did not restrain the ability to seek relief for infringement of statutory substantive rights. Here, in contrast, enforcement of Epic's Agreement directly infringes on its employees' substantive Section 7 right to collective action.

Moreover, that Lewis clicked an "I agree" button is irrelevant, because the Supreme Court has also consistently concluded that employees cannot (even knowingly) waive fundamental federal statutory rights. For example, in *National Licorice Co. v. NLRB*, an employment contract required employees to relinquish the right to strike or join a union, in clear violation of Sections 7 and 8 of the NLRA. 309 U.S. at 355. The Supreme Court held that the violation of the NLRA furnished grounds for declaring the contract unenforceable, given that "the contracts were the fruits of unfair labor practices, stipulated for the renunciation by the employees of rights guaranteed by the [NLRA], and were a continuing means of thwarting the policy of the [NLRA]." *Id.* at 361; *See also J.I. Case Co.*, 321 U.S. at 337-38 (holding that individual employment contracts could not be used as grounds to waive rights protected by the NLRA; concluding that "[w]herever private contracts conflict with [the NLRA's] functions, they obviously must yield or the [NLRA] would be reduced to a futility.").

This Court has also recognized that a lack of coercion in entering a contract is irrelevant to the question of whether it violates the NLRA. In *NLRB v. Stone*, 125 F.2d 752, 756 (7th Cir. 1942), the Seventh Circuit held that the provision in individual employee contracts requiring employees to adjust their grievances with their employer individually "constitutes a violation of the [NLRA] per se." The *Stone*

court articulated that the provision at issue could not "be legalized by showing the contract was entered into without coercion...." *Id.* The provision at issue waived employees' Section 7 rights and was thus a restraint upon collective action that could not be enforced. *Id.*

Recently, the Supreme Court affirmed that prospective waivers of federal substantive rights are not enforceable *even in the FAA context*. In *Italian Colors*, the Court held that class action prohibitions in arbitration contracts cannot be invalidated simply because they make effective vindication of statutory rights difficult; but where arbitration contracts make the exercise of statutory rights impossible by outright prohibiting the assertion of such rights, they are invalid as "'prospective waiver[s] of a party's *right to pursue* statutory remedies.'" 133 S. Ct. at 2310-11 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19 (emphasis in original)).

Stated differently, the Supreme Court made a crucial distinction between waivers that are enforceable under the FAA (those that render vindication of statutory rights difficult) and waivers that the FAA does not sanction (those that prohibit the assertion of statutory rights). Epic's Agreement falls into the latter category, because it explicitly waives its employees' right to pursue collective legal action guaranteed by the NLRA. *See Murphy Oil,* 2014 WL 5465454 at *1. As such, under a long line of Supreme Court precedent from *Mitsubishi Motors* to *Italian Colors*, Epic's Agreement is unenforceable because it operates to waive employees' substantive federal right under the NLRA.

26

In sum, invalidation of the Class Waiver does not run afoul of the FAA; rather, this interpretation correctly gives full force to two federal statutes, the NLRA and the FAA. Because the Class Waiver forces employees, as a condition of their employment, to give up a substantive federal right to concerted activity, and prospective waivers of substantive rights are unenforceable under the FAA, there is no conflict between the FAA and the NLRA. Both statutes can and must be harmonized, and the court is not "at liberty to pick and choose among congressional enactments…." *Morton*, 417 U.S. at 551.

### C. The Saving Clause of the FAA Specifically Precludes Enforcement of a Contract That Waives Substantive Federal Rights.

Not only does Supreme Court precedent interpreting the FAA prohibit an arbitration contract's waiver of substantive federal rights, the FAA *itself* maintains that such a contract would be unenforceable. The FAA's saving clause explicitly provides that an arbitration contract is unenforceable if legal grounds exist for its revocation. 9 U.S.C. § 2.[2]  Under the saving clause, the invalidation of an illegal arbitration agreement does *not* conflict with the FAA where that invalidation is based on legal grounds that would mandate the nullification of any contract. Illegality of contract is one such "legal ground." As established above, Epic's Agreement depriving employees of their Section 7 right to collective legal action violates Section 8(a)(1) of the NLRA. Because Epic's illegal contract falls squarely

---

[2] When Epic cites to the FAA in its brief, it truncates the saving clause, suggesting that the FAA merely says that agreements to arbitrate "shall be valid, irrevocable, and enforceable," neither mentioning that this comes with an important exception – "save upon such grounds as exist in law or in equity for the revocation of any contract" – nor noting with an ellipses that there is another clause in this statute. (Appellant's Br. 15.) *See* 9 U.S.C. § 2.

under the FAA's saving clause, there is no conflict between the NLRA and the FAA

in the instant case.

 While Epic would have the Court believe that arbitration contracts have a

special status entitling them to enforcement regardless of their contents, the clear

text of the FAA refutes this self-serving claim. The Supreme Court has in fact

unwaveringly recognized that courts cannot enforce contracts that violate the NLRA

because they are illegal. *See Kaiser,* 455 U.S. at 86. Supreme Court precedent

recognizes this uncontroversial reasoning:

> [T]he purpose of Congress [in enacting the FAA] was to
> make arbitration agreements as enforceable as other
> contracts, but not more so. To immunize an arbitration
> agreement from judicial challenge [on grounds applicable
> to other contracts] would be to elevate it *over* other forms
> of contract—a situation inconsistent with the 'saving
> clause.'

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967). The

FAA's saving clause explicitly sanctions the invalidation of arbitration contracts

that would be void as a matter of law, just as any other contract limiting an

individual's statutory rights would be invalidated.

 Epic fails to address the import of the FAA's saving clause (or even

acknowledge its existence), instead arguing without support that legal grounds do

not exist for the revocation of its Agreement. It is "well established, however, that a

federal court has a duty to determine whether a contract violates federal law before

enforcing it." *Kaiser*, 455 U.S. at 83. Epic's discussion of the FAA without even a

passing mention of the saving clause violates the canon of statutory construction

against surplusage. *See Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1178 (2013). Courts are hesitant to adopt an interpretation of a statute which "renders superfluous another portion of that same law." *Id.* (*quoting Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837 (1988)). Epic's argument that courts must blindly enforce all agreements to arbitrate "according to their terms" without considering whether standard contract defenses apply renders the entire saving clause of the FAA superfluous. If Congress truly meant that any agreement to arbitrate, regardless of its contents, was iron-clad and enforceable, then it would not have written the express saving clause preserving generally applicable contract defenses into the statute. The Court must consider whether contract defenses exist that may invalidate an agreement to arbitrate. *Kaiser*, 455 U.S. at 83. Contrary to Epic's wish, courts cannot simply rubber-stamp any agreement just because it involves arbitration.

Indeed, courts routinely invalidate contracts that unlawfully abrogate employees' Section 7 rights. *See supra* Section I.A; *Nat'l Licorice Co.,* 309 U.S. at 361; *Stone*, 125 F.2d at 756. Arbitration contracts, which are on equal footing with all other contracts, are not immune from invalidation where they violate federal law. Far from compelling a contrary result, the FAA's saving clause reaffirms that illegality, as a common contract defense, applies with equal force to arbitration contracts.

Given this precedent, the Fifth Circuit's discussion of the FAA's saving clause in *D.R. Horton* is unpersuasive. There, the court held that "[t]he saving clause is

"not a basis for invalidating the waiver of class procedures in the arbitration agreement." *D.R. Horton*, 737 F.3d at 360. The court did not reach this conclusion upon finding that such waivers do not, in fact, violate the NLRA. Nor did the court grapple with Supreme Court precedent declaring contracts that strip employees of Section 7 rights illegal. Instead, the Fifth Circuit relied exclusively on *Concepcion*, which has nothing to do with the NLRA (or any federal substantive rights, for that matter) and which does not support the Court's rejection of the saving clause in the NLRA context. *Concepcion* held that "the saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." 536 U.S. at 333 (*citing Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The violation of a federal law such as the NLRA *is* a generally applicable contract defense. *Kaiser*, 455 U.S. at 78-79; III S. Williston*, Williston on Contracts* § 1630, at 2865-66 (1920). As such, *Concepcion* simply does not support the Fifth Circuit's untenable assertion that the saving clause is inapplicable in the NLRA context.

The FAA's saving clause compels the conclusion that the FAA and the NLRA can co-exist. One common contractual defense, that the contract is illegal, applies here, where the Class Waiver impermissibly restricts Epic's employees' substantive rights under the NLRA. The FAA's saving clause explicitly provides that the Class Waiver may be declared unenforceable. By invalidating the Class Waiver under the FAA's saving clause, the district court satisfied its obligation to give effect to both

federal statutes, and this Court should do the same.

## III.  THE NLRA DOES POSSESS THE CONTRARY CONGRESSIONAL COMMAND TO OVERRIDE THE FAA

As Lewis demonstrates above, the NLRA and the FAA can be read in harmony, because Epic's Agreement is an illegal contract under the NLRA and therefore falls squarely under the FAA's saving clause. No Supreme Court decision interpreting the FAA has permitted an arbitration contract to force the waiver of a substantive federal right. *See Italian Colors*, 133 S. Ct. at 2310. This Court need not inquire whether the NLRA "overrides" the FAA; but if this inquiry is reached, the NLRA clearly contains a "contrary congressional command" overruling the FAA.

Under Supreme Court precedent, an arbitration contract is unenforceable where, the FAA's "mandate has been 'overridden by a contrary congressional command,'" which may be deduced from a statute's text or legislative history, or from an "inherent conflict between arbitration and the statute's underlying purposes." *CompuCredit*, 132 S. Ct. at 675 (*citing Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). Epic misleadingly frames the question of contrary congressional command as whether the NLRA outlaws arbitration, period. However, the proper question is whether the NLRA overrides "the FAA's mandate." *CompuCredit*, 132 S. Ct. at 669. Epic continually reminds the Court that the FAA's mandate is that "arbitration agreements must be enforced 'according to their terms.'" (Appellant's Br. 34.) As demonstrated below, the text, legislative history, and fundamental purpose of the NLRA express a congressional command that overrides the FAA's mandate to enforce an agreement to arbitrate which precludes

collective action. If there is a conflict between the NLRA and the FAA, the NLRA governs and requires invalidation of the Class Waiver.

First, the text of the NLRA protects employees' right to engage in collective action. Section 7 provides that employees "shall have the right … to engage in … concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8(a)(1) declares that "it shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7] of this title …." 29 U.S.C. § 158(a)(1). Congress's use of the word "shall" indicates that it intended employees' right to collective action to be free from judicial discretion. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). The text is unambiguous: concerted action is a right with which employers may not interfere—and with which courts may not tinker.

Further, the "right to engage in concerted legal activity is plainly authorized by the broad language of Section 7, as it has been authoritatively construed by the Supreme Court in *Eastex*…as part of the protected 'resort to administrative and judicial forums.'" *Murphy Oil*, 2014 WL 5465454 at *12. Indeed, Epic even disregards the Supreme Court's admonition in *City Disposal Systems* that "concerted activity" under Section 7 "clearly … embraces the activities of employees who have joined together in order to achieve common goals." 465 U.S. at 830.

Epic does not address why the NLRA's explicit protection of employees' right to concerted activity does not prevent Epic from depriving its employees of the right

32

to act in concert for their mutual aid and protection. Instead, Epic focuses on the lack of a definition of "concerted activity" in the text of the NLRA. (Appellant's Br. 37-39.) Congress and the Supreme Court have empowered the Board to define this term, and the Board *has* defined it to encompass a single employee pursuing collective legal action on behalf of others. *See supra* Section I.A.

Lewis does not dispute that Section 7 "is silent on whether employees have a collective right to bring class claims." (Appellant's Br. 37.) But the NLRA need not contain magic words to evince a contrary congressional command. The lack of specific language referring to "arbitration" is hardly surprising given that when the NLRA was enacted (and reenacted), courts had never applied the FAA to employment contracts, and Congress had not intended the FAA to apply to employment contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 125 (2001) (Stevens, J., dissenting). That development did not come until 2001—76 years after the enactment of the FAA and 66 years after the enactment of the NLRA. *See id.*[3]

In contrast, the Board and courts have unwaveringly invalidated restrictions on Section 7 rights based on the NLRA's text, which covers collective legal action, since its adoption. *See Murphy Oil*, 2014 WL 5465454, at *10. The NLRA's text

---

[3] To limit the scope of a law based on only situations that were anticipated when that law was passed would invalidate much of modern jurisprudence, as courts are constantly required to apply old laws to modern situations. For example, though video games did not exist when the First Amendment was enacted, the Supreme Court has still found that video games fall within this centuries-old protection. *See Brown v. Entertainment Merchants Association*, 131 S. Ct. 2729, 2733 (2011).

plainly orders protection of employees' right to concerted activity and prohibits employers from interfering with that right.[4]

Second, the legislative history of the NLRA establishes a contrary congressional command that overrides the FAA's mandated enforcement of contracts prohibiting employees' concerted action. The debate over the NLRA shows that the legislature's fundamental concern was rampant inequality of power between employees and employers. *To Create a National Labor Board: Hearings Before the Comm. on Education and Labor on S. 2926,* 73rd Cong., 2nd Sess. 47 (1934) (statement of Hon. Robert F. Wagner) ("It is simply absur[d] to say that an individual, one of 10,000 workers, is on an equality with his employer in bargaining for wages. The worker, if he does not submit to the employer's terms, faces ruin for his family. The so-called freedom of contract does not exist under such circumstances."). Congress recognized that government protection of employees' right to engage in "concerted activities for the purposes of collective bargaining or *other mutual aid or protection"* was essential to addressing this concern. *National Labor Relations Board: Hearings Before the Comm. on Education and Labor on S. 1958,* 74th Cong., 1st Sess. 1414 (1935) (statement of Hon. Robert F. Wagner). The NLRA's legislative history reveals that Congress sought to place *no* "limitations

---

[4] Epic's insinuation that because Section 7 does not *require* employees to pursue collective action, "an employer who reaches a voluntary agreement to resolve issues on an individual basis has not committed an unfair labor practice" demonstrates Epic's purposeful disregard for the NLRA and thus the protection of its employees' rights. (Appellant's Br. 37.) Of course, "the [NLRA] does not compel agreements between employers and employees," but the option whether to join an agreement in no way diminishes that the Section 7 right *to* engage in collective legal action is "a fundamental right" with which employers may not interfere. *Jones & Laughlin Steel Corp.*, 301 U.S. at 45.

upon the broadest reasonable interpretation of its omnibus guaranty of freedom." *Id.*

Third, the NLRA's underlying purpose—safeguarding employees' right to act concertedly—is in "inherent conflict" with the FAA's enforcement of arbitration contracts stripping employees of that right.[5] Epic proffers that arbitration is compatible with collective bargaining and so no inherent conflict could exist. Again, Epic disregards the NLRA's fundamental purpose: protecting employees' substantive right to concerted activity, which the Supreme Court and the Board have equated with the right to pursue collective legal action. *See supra* Section I.A. Epic's attempt to frame the right to collective legal action as a mere "procedural device" thus fails. This case is not about Rule 23 or the FLSA. The purpose and construction of those statutes is irrelevant to the unequivocal purpose of the NLRA, which *is* in inherent conflict with mandatory *individual* arbitration, and which Epic *fails* to address.[6] Regardless, the Board has declared that employees' right to collective action is a substantive, not merely procedural, right:

---

[5] Indeed, while the NLRA's purpose of protecting employee's right to concerted activity is unequivocal, the FAA's "pro-arbitration policy" is implicit and qualified. The NLRA has expressly protected the fundamental right to engage in concerted activity for over 80 years. *See Murphy Oil*, 2014 WL 5465454, at *18; *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 735 (1981). The FAA, in contrast, does not expressly call for individual arbitration. Indeed, the stated purpose of the FAA was to put arbitration contracts "on equal footing" with any other contracts. *Concepcion*, 563 U.S. at 339 (internal citation omitted).

[6] Epic's argument that the FAA prevails over the NLRA because the FAA was re-enacted one month after the NLRA, making the FAA the later-enacted statute, is unavailing. The 1947 reenactment of the FAA *preserved* the language of its saving clause, providing that arbitration contracts are unenforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As such, the reenactment of the FAA had no bearing on the extant NLRA's invalidation of contracts interfering with employees' right to pursue collective legal action.

> Any contention that the Section 7 right to bring a class or collective action is merely "procedural" must fail. The right to engage in collective action—including collective legal action—is the core substantive right protected by the NLRA and is the foundation on which the Act and Federal labor policy rest.

*In re D.R. Horton*, 2012 WL 36274 at *12. This interpretation must receive "the greatest deference," because Congress has expressly authorized the Board to make policy determinations concerning the NLRA. *ABF Freight System*, 510 U.S. at 324.

In sum, the text, legislative history, and underlying purpose of the NLRA embody a contrary congressional command that overrides the FAA's statutory directive to enforce arbitration contracts depriving employees of their Section 7 rights. Epic attempts to distract from this conclusion by crowding its argument with discussions of unionized labor and the Portal to Portal Act, which have absolutely no bearing on this case. This case is about the NLRA's unambiguous command: employees have a substantive right to collective legal action with which employers may not interfere. The NLRA thus governs this case and requires revocation of Epic's illegal Class Waiver.

## IV.    THE CASES CITED BY EPIC ARE INAPPOSITE AND UNPERSUASIVE

Epic's argument rests on imploring this court to fall in line with district courts that have followed the Fifth Circuit's decision in *D.R. Horton*, despite that decision's major flaws of statutory interpretation. In addition to ignoring the problems of the Fifth Circuit's *D.R. Horton* decision, Epic's attempt to cast the question of whether employees can be forced to waive their right to litigate collectively as a settled question is disingenuous. Many of the cases to which Epic

cites as supporting its decision either do not address the substantive rights granted by the NLRA at all, or fail to harmonize the NLRA with the FAA as required. As detailed below, these cases are inapposite and provide no grounds to persuade this Circuit to jump on the *D.R. Horton* bandwagon.

## A. The Fifth Circuit's Decision in *D.R. Horton v. NLRB* Failed To Harmonize the NLRA and FAA as Required.

Epic relies heavily on the Fifth Circuit's *D.R. Horton* decision, but fails to provide any reason why that decision was correct. In fact, the Fifth Circuit's decision was poorly reasoned because it failed to interpret the FAA and the NLRA in harmony as required. *See supra* Section II; *see also Murphy Oil*, 2014 WL 5465454, at *9 (noting, in direct response to the Fifth Circuit's *D.R. Horton* decision, that the court gave "too little weight" to national labor policy in its decision). As such, this Court should reject its reasoning.[7]

The Fifth Circuit reversed the Board's decision in *D.R. Horton* holding that mandatory individual arbitration violated employees' Section 7 rights under the NLRA. *D.R. Horton,* 737 F.3d at 364. The Fifth Circuit acknowledged that courts must defer to the Board's interpretation of Section 7 rights under the NLRA and that both the Board and the courts have held that filing "collective and class claims" is a protected Section 7 right. *Id.* at 356-57. But the Court defied these principles and instead surmised that because collective actions *in other contexts*, such as under the FLSA or Rule 23, have been treated as merely procedural, the NLRA does

---

[7] The Fifth Circuit recently issued a decision reversing the Board's decision in *In re Murphy Oil. See Murphy Oil USA, Inc. v. NLRB*, No. 14-60800, 2015 WL 6457613 (5th Cir. Oct. 26, 2015). These decisions cover the same ground as *D.R. Horton*, and Lewis maintains that the Fifth Circuit's reasoning in *Murphy Oil* is flawed for the same reasons.

not protect a substantive right. *Id.* at 357-58; *compare with Murphy Oil*, 2014 WL 5465454 at *10 (demonstrating Section 7 rights are substantive, not procedural). The Fifth Circuit failed to explain why courts should discard decades of jurisprudence protecting the substantive rights under the NLRA in favor of the FAA.

The Fifth Circuit, extrapolating broadly from the Supreme Court's reasoning in *Concepcion*, essentially determined that the FAA's saving clause can be disregarded to promote arbitration. *Id.* at 359 ("*Concepcion* leads to the conclusion that the Board's rule does not fit within the FAA's saving clause" because "like the statute in *Concepcion*, the Board's interpretation prohibits class-action waivers."); *compare with Murphy Oil*, 2014 WL 5465454 at *11-12.

Blind application of *Concepcion* to both *D.R. Horton* and the present case shows the flaws in the Fifth Circuit's perfunctory analysis. First, *Concepcion* concerned the interaction of federal law with state law, where the supremacy of federal law clearly governs. *See Concepcion*, 563 U.S. at 341. The Fifth Circuit's cursory determination that the FAA and NLRA conflict ignores the different, higher standard that courts must apply in determining whether two *federal* statutes are in conflict. *See supra* Section II.

Second, the NLRA explicitly protects the right of employees to act collectively. *Concepcion*, in contrast, concerned consumers with no such long-standing substantive federal rights at issue. *Id.* at 333. Third, unlike the state law at issue in *Concepcion*, the NLRA does not discriminate against arbitration

contracts that violate its terms; *any* form of employer interference with Section 7 rights is illegal. Illegality of contract falls squarely under the FAA's saving clause, which provides that an agreement to arbitrate – like any other contract – is unenforceable if it deprives a party of statutory rights. 9 U.S.C. § 2. In contrast, the California rule abrogated by *Concepcion* applied specifically to arbitration, and specifically disfavored it. *Concepcion*, 563 U.S. at 341. The NLRA's protection of substantive rights does not apply only to arbitration contracts, but to *any* contract which would illegally restrain them.

Rather than grapple with this analysis, the Fifth Circuit perfunctorily concluded that class arbitration presents "an actual impediment to arbitration and violates the FAA." *D.R. Horton*, 737 F.3d at 360. However, courts must at least try to interpret statutes to give effect to both the FAA and NLRA—an accommodation made possible by the FAA's saving clause and an obligation shirked by the Fifth Circuit. The Fifth Circuit did not even attempt to interpret these statutes in concert, rather jumping to the conclusion that the NLRA does not override the FAA. *Id.* at 360-61. Absent an actual, irreconcilable conflict between the two statutes, this "contrary congressional command" analysis is misplaced and unnecessary. The Fifth Circuit's decision is erroneous and unfounded, and should not be followed by this Court.[8]

_____

[8] Epic's lengthy string cite contained numerous courts that Epic states support its position. The following cases follow the Fifth Circuit's decision in *D.R. Horton*, and Lewis maintains were wrongly decided for the same reasons. See *Green v. Zachry Indus., Inc.*, 36 F. Supp. 3d 669 (W.D. Va. 2014); *Knight v. Rent-A-Ctr. E., Inc.*, No. CIV.A. 4:13-1734-MGL, 2013 WL 6826963 (D.S.C. Dec. 23, 2013); *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2014 WL 10416989 (N.D. Ill. Sept. 26, 2014); *Delock v. Securitas Sec. Servs. USA*, Inc., 883 F. Supp.

### B. Epic Overstates Holdings of Other Courts on the Question of Whether No-Class Arbitration Provisions Violate Substantive Rights Under the NLRA

Over seven pages of Epic's brief is dedicated to a string cite to other cases that have in some way mentioned the Fifth Circuit's decision in *D.R. Horton*. Epic suggests that this Court should simply follow those courts but fails to provide any legal analysis of *why* those courts ruled correctly. As outlined below, the decisions to which Epic cites do not even address the question at issue here, and therefore provide no support for Epic's position. Further, as noted in the footnotes, many of the cases cited by Epic do not in fact support its position *at all*, but seem to have been included simply because they mention *D.R. Horton*.

Epic claims that the "Eighth Circuit took the same position as the Fifth Circuit" in *Owen v. Bristol Care, Inc.* 702 F.3d 1050 (8th Cir. 2013). In fact, *Owen* focused on whether the FLSA (as opposed to the NLRA) created any substantive right to act collectively, and held that the FLSA did not contain a "contrary congressional command" to "override" the FAA. *Id.* at 1052-53. In other words,

---

2d 784 (E.D. Ark. 2012); *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070 (E.D. Cal. 2014); *Longnecker v. American Exp. Co.*, 23 F. Supp. 3d 1099 (D. Ariz. 2014); *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW (SSx), 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014); *Appelbaum v. AutoNation Inc.*, No. SACV 13-01927 JVS, 2014 WL 1396585 (C.D. Cal. Apr. 8, 2014); *Zabelny v. CashCall, Inc.*, No. 2:13-CV-00853-PAL, 2014 WL 67638 (D. Nev. Jan. 8, 2014); *Siy v. CashCall, Inc.*, No. 2:13-CV-00953-PAL, 2014 WL 37879 (D. Nev. Jan. 6, 2014); *Fardig v. Hobby Lobby Stores Inc.*, No. SACV 14-561 JVS ANX, 2014 WL 2810025 (C.D. Cal. Aug. 11, 2014); *Fimby-Christensen v. 24 Hour Fitness USA, Inc.*, No. 5:13-CV-01007-EJD, 2013 WL 6158040 (N.D. Cal. Nov. 22, 2013); *Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13-2122 CAS CWX, 2013 WL 3233211 (C.D. Cal. June 25, 2013); *Birdsong v. AT&T Corp., No.* C12-6175 TEH, 2013 WL 1120783 (N.D. Cal. Mar. 18, 2013); *Jasso v. Money Mart Express, et. al.*, 879 F. Supp. 2d 1038 (C.D. Cal. 2012); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831 (N.D. Cal. May 7, 2012); *Cilluffo v. Cent. Refrigerated Servs.*, No. EDCV 12-00886 VAP (OPx), 2012 WL 8523507 (C.D. Cal. Sept. 24, 2012); *Hickey v. Brinker Int'l Payroll Co., L.P.*, No. 1:13-CV-00951-REB-BNB, 2014 WL 622883 (D. Colo. Feb. 18, 2014).

*Owen* decided a wholly different question than that before this Court. *Owen* is inapposite because it considers not the substantive right to act collectively protected under the NLRA, but the collective action mechanism provided in the FLSA. As such, it has no bearing on this case.[9]

Epic is correct that the Second Circuit agreed with the Eighth—representing another Circuit which has not, in fact, decided the question before this Court. In *Sutherland*, 726 F.3d at 297, the court held that "[n]o contrary congressional command requires us to reject the waiver of class arbitration" in the *FLSA* context. The court's discussion of the *NLRA* was limited to *one footnote*, in which the court incorrectly stated that it owed no deference to the Board's reasoning. *Id.* at 297 n.8. The Court never gave proper consideration to whether the NLRA protects a substantive right to bring claims collectively.

Epic also disingenuously suggests that the Ninth Circuit has rejected the Board's reasoning, pointing first to *Richards v. Ernst & Young, LLP*, 744 F.3d 1072 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 355 (2014). In fact, the *Richards* decision explicitly declined to decide the NLRA issue, given that it was not raised in the

---

[9] The Eleventh Circuit in *Walthour v. Chipio Windshield Repair, LLC*, similarly, focused on the collective action provision in the FLSA, not the substantive right to collective action found in the NLRA. 745 F.3d 1326, 1330-36 (11th Cir. 2014). The Eleventh Circuit did not address Section 7 of the NLRA or the interaction between the NLRA and the FAA. The following district court cases, all cited by Epic, similarly concern whether the FLSA grants substantive rights, not the NLRA- in fact, some do not mention the NLRA at all: *Dixon v. NBCUniversal Media*, LLC, 947 F. Supp. 2d 390 (S.D.N.Y. 2013) (this case does not mention the NLRA); *Torres v. United Healthcare Servs., Inc.*, 920 F. Supp. 2d 368 (E.D.N.Y. 2013) (this case does not mention the NLRA); *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 CIV. 9305 LTS, 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013); *LaVoice v. UBS Fin. Servs., Inc.*, No. 11 CIV. 2308 BSJ JLC, 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012); *Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441 (M.D.N.C. 2015) (does not discuss NLRA).

district court. The court's discussion of the NLRA was relegated to a footnote in which, "[w]ithout deciding the issue," it passively noted that the majority of courts have "determined that they should not defer to the NLRB's decision in D.R. Horton."[10] *Id.* at 1075 n.3.

Nevertheless, Epic incorrectly posits that the Ninth Circuit's decision in *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014) rendered its *Richards* determination "crystal clear." In fact, the court in *Johnmohammadi* did not even mention deference to the Board. Nor did *Johnmohammadi* reject the Board's reasoning. The court held that Bloomingdales did not interfere with its employees' Section 7 right to collective legal action because it offered a choice between resolving future employment-related disputes in court (including on a collective basis) or pursuing individual arbitration. *Id.* at 1075-76. As such, the court found no violation of the NLRA. *Id.* at 1076. Far from endorsing the Fifth Circuit, the *Johnmohammadi* court explicitly distinguished it, noting that "Bloomingdale's did not require [its employee] to accept a class-action waiver as a condition of employment, as was true in *In re D.R. Horton, Inc.*" *Id.* at 1075. Epic has offered its employees *no* choice to pursue collective claims in *any* forum whatsoever. As such, Lewis's case lacks the very fact in *Johnmohammadi* on which the court relied in finding no violation of the NLRA.

The question before this Court is whether Epic has violated the NLRA by depriving Lewis of his substantive federal right to collective legal action under

---

[10] The Ninth Circuit is, however, poised to decide this issue. *See Morris v. Ernst & Young*, No. 13-16599 (9th Cir. argued Nov. 17, 2015).

Section 7, and whether, as Epic argues, the FAA sanctions such a violation. For the reasons discussed above, the FAA does not mandate enforcement of an illegal contract but in fact provides for its invalidation. Regardless, Lewis's position is not that the *FLSA* furnishes a substantive right to a collective action in court, but that Epic cannot contract away, as a condition of employment, the right guaranteed by Section 7 of the NLRA that employees may act concertedly for their mutual aid and protection by filing collective claims in either a judicial or arbitral forum. Neither the Second, Eighth, nor Ninth Circuits have addressed this question; thus, this Court is not fated to their conclusions. Epic's suggestion otherwise is a self-serving and baseless plea for an imprimatur on its illegal contract.

## V.    IN THE ALTERNATIVE, THIS CASE MUST BE REMANDED TO CONSIDER UNCONSCIONABILITY AND CONTRACT ARGUMENTS

In the district court, Lewis argued that the arbitration agreement at issue was invalid not only because of the class waiver provision, but because the agreement was both unconscionable and lacking consideration. (S.A. 1.) The district court considered only Lewis's argument that the class waiver provision of the agreement violated the NLRA; because of the Agreement's saving clause, under which invalidation of the Class Waiver means that any collective wage claims *must* be brought in court, this finding was dispositive. Should this Court reverse the district court's decision, it should remand with the directive that the district court must consider Lewis's other arguments.

## CONCLUSION

Epic's Class Waiver unlawfully strips employees of a substantive federal right to take collective legal action for their mutual aid and protection. This illegal contract can be invalidated under the saving clause of the FAA, giving effect to both federal statutes. "Arbitration" is not a magic word that can be used to defy the substantive federal rights granted by statute, or the Court's duty to interpret federal statutes in harmony. Epic seeks to use an arbitration agreement as a shield and prevent its employees from working together to exercise their rights. This Court should affirm the district court's ruling that Epic's Class Waiver violates the substantive rights of Epic's employees under the NLRA.

**Dated** : December 9th, 2015.

/s/ *Caitlin M. Madden*

**HAWKS QUINDEL, S.C.**
William E. Parsons
wparsons@hq-law.com
David C. Zoeller
dzoeller@hq-law.com
Caitlin M. Madden
cmadden@hq-law.com
Katelynn M. Williams
kwilliams@hq-law.com
222 West Washington Ave., Suite 450
Madison, Wisconsin 53701-2155
Telephone: 608-257-0040
Facsimile: 608-256-0236

**HABUSH HABUSH & ROTTIER S.C.**
Daniel A. Rottier
rottier@habush.com
Jason J. Knutson
jknutson@habush.com
Breanne L. Snapp
bsnapp@habush.com
150 East Gilman St., Suite 2000
Madison, Wisconsin 53703
Telephone: 608-255-6663
Facsimile: 608-255-0745

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(B)

The undersigned, counsel of record for Plaintiff-Appellee Jacob Lewis, furnishes the following in compliance with FRAP 32(a)(7)(B):

I hereby certify that this Brief conforms to the rules contained in FRAP 32(a)(7)(B). This brief was prepared in Century font, using 12 point type in the body and 11 point type in the footnotes, prepared using Microsoft Word. The number of words included in this brief (exclusive of disclosure statement, table of contents, table of authorities, and certificates) is 11,845 as calculated by the Microsoft word-count function.


**Dated:** December 9th, 2015.

_/s/ Caitlin M. Madden_

**HAWKS QUINDEL, S.C.**
William E. Parsons
wparsons@hq-law.com
David C. Zoeller
dzoeller@hq-law.com
Caitlin M. Madden
cmadden@hq-law.com
Katelynn M. Williams
kwilliams@hq-law.com
222 West Washington Ave., Suite 450
Madison, Wisconsin 53701-2155
Telephone: 608-257-0040
Facsimile: 608-256-0236

**HABUSH HABUSH & ROTTIER S.C.**
Daniel A. Rottier
rottier@habush.com
Jason J. Knutson
jknutson@habush.com
Breanne L. Snapp
bsnapp@habush.com
150 East Gilman St., Suite 2000
Madison, Wisconsin 53703
Telephone: 608-255-6663
Facsimile: 608-255-0745

## CERTIFICATE OF SERVICE

The undersigned, counsel for Plaintiff-Appellee, hereby certifies that on December 9, 2015, the Brief of Appellee Jacob Lewis was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. The following participants in the case are registered as CM/ECF users and will be served by the CM/ECF system:

> Noah A. Finkel
> Andrew L. Scroggins
> SEYFARTH SHAW LLP
> 131 S. Dearborn Street, Suite 2400
> Chicago, Illinois 60603

I further certify that fifteen copies of the foregoing Brief of Plaintiff-Appellee, were sent to the Clerk's Office of the United States Court of Appeals for the Seventh Circuit this 9th day of December, 2015.

**Dated:** December 9th, 2015.

/s/ *Caitlin M. Madden*
**HAWKS QUINDEL, S.C.**
William E. Parsons
wparsons@hq-law.com
David C. Zoeller
dzoeller@hq-law.com
Caitlin M. Madden
cmadden@hq-law.com
Katelynn M. Williams
kwilliams@hq-law.com
222 West Washington Ave., Suite 450
Madison, Wisconsin 53701-2155
Telephone: 608-257-0040
Facsimile: 608-256-0236

**HABUSH HABUSH & ROTTIER S.C.**
Daniel A. Rottier
rottier@habush.com
Jason J. Knutson
jknutson@habush.com
Breanne L. Snapp
bsnapp@habush.com
150 East Gilman St., Suite 2000
Madison, Wisconsin 53703
Telephone: 608-255-6663
Facsimile: 608-255-0745