No. 15-2997

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

JACOB LEWIS,
Plaintiff-Appellee

v.

EPIC SYSTEMS CORPORATION,
Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN,

CASE NO. 3:15-CV-00082-BBC

THE HONORABLE JUDGE BARBARA B. CRABB

---

## REPLY BRIEF OF DEFENDANT-APPELLANT
## EPIC SYSTEMS CORPORATION

---

NOAH A. FINKEL
ANDREW SCROGGINS
SEYFARTH SHAW LLP
131 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60603
(312) 460-5000
nfinkel@seyfarth.com
ascroggins@seyfarth.com

FOR DEFENDANT-APPELLANT
EPIC SYSTEMS CORPORATION

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................... 1

I.   THERE IS NO SUBSTANTIVE RIGHT TO PURSUE A CLASS
     OR COLLECTIVE ACTION ................................................................ 2

     A.   The NLRA Does Not Provide A Substantive Right To
          Litigate On A Class Or Collective Basis Claims Arising
          Under Other Statutes................................................................ 3

          1.   Neither Section 7 Nor The Decisions Construing It
               Guarantee Particular Forums or Procedural Rights......... 4

          2.   Section 7 Does Not Go So Far As To Guarantee
               Access to Class And Collective Action Procedural
               Mechanisms........................................................................ 9

          3.   Lewis Was Not Unlawfully Forced To Waive His
               Section 7 Rights ............................................................... 16

     B.   The Text Of Section 7 And The History Behind Its
          Revision Show That The Substantive Right Protected By
          The Statute Is The Right To Choose Whether Or Not To
          Engage In Concerted Activities................................................ 18

     C.   The Board's Recent Decisions Invalidating Class And
          Collective Action Waivers Are Not Owed Any Deference .......... 20

II.  THERE IS NO CONTRARY CONGRESSIONAL COMMAND
     THAT OVERCOMES THE PREEMINENCE OF THE FAA .............. 22

III. THERE IS AMPLE BASIS IN THE RECORD TO DECIDE
     THAT THE ARBITRATION AGREEMENT WAS SUPPORTED
     BY CONSIDERATION AND IS NOT UNCONSCIONABLE ............. 24

CONCLUSION.......................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

CASES

*200 East 81st Restaurant Corp.*,
  362 NLRB No. 152 (2015) ............................................................. 21

*Altex Ready Mixed Concrete Corp. v. NLRB*,
  542 F.2d 295 (1976) ..................................................................... 15

*American Express Co. v. Italian Colors Restaurant*,
  133 S.Ct. 2304 (2013) ................................................. 10, 22, 23

*AT&T Mobility LLC v. Concepcion*,
  131 S.Ct. 1740 (2011) ................................................................. 23

*Brady v. Nat'l Football League*,
  644 F.3d 661 (8th Cir. 2011) .............................................. 13, 14

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ..................................................................... 10

*Chamber of Commerce of U.S. v. Brown*,
  554 U.S. 60 (2008) ............................................................... 18, 19

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ..................................................................... 21

*CompuCredit Corp. v. Greenwood*,
  132 S.Ct. 665 (2012) ................................................................... 22

*D.R. Horton, Inc. v. NLRB*,
  737 F.3d 344 (5th Cir. 2013) .................................... 17, 21, 23

*Eastex, Inc. v. NLRB*,
  437 U.S. 556 (1978) .............................................................passim

*Fresh & Easy Neighborhood Market*,
  361 NLRB No. 12 (2014) ............................................................. 21

*Genesis Healthcare Corp. v. Symczyk*,
  133 S.Ct. 1523 (2013) ................................................................. 12

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ....................................................................... 22

*Gore v. Alltel Commc'ns, LLC,*
    666 F.3d 1027 (7th Cir. 2012) ............................................................... 24

*J.I. Case Co. v. NLRB,*
    321 U.S. 332 (1944) ............................................................................... 19

*Johnmohammadi v. Bloomingdale's, Inc.,*
    755 F.3d 1072 (9th Cir. 2014) ............................................................... 17

*Leviton Mfg. Co., Inc. v. NLRB,*
    486 F.2d 686 (1st Cir. 1973) .................................................................. 14

*Mohave Elec. Co-op., Inc. v. NLRB,*
    206 F.3d 1183 (D.C. Cir. 2000) .............................................................. 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) .................................................................................... 24

*Murphy Oil USA, Inc.,*
    361 NLRB No. 72 (2014) ................................................................. 21, 17

*Myers v. Hertz Corp.,*
    624 F.3d 537 (2nd Cir. 2010) ................................................................ 11

*National Licorice Co. v. NLRB,*
    309 U.S. 350 (1940) ............................................................................... 19

*NLRB v. City Disposal Sys., Inc.,*
    465 U.S. 822 (1984) .................................................................................. 8

*NLRB v. Jones & Laughlin Steel Corp.,*
    301 U.S. 1 (1937) ...................................................................................... 5

*NLRB v. Moss Planing Mill Co.,*
    206 F.2d 557 (1953) .................................................................................. 9

*NLRB v. United Parcel Serv., Inc.,*
    677 F.2d 421 (6th Cir. 1982) .............................................................. 9, 15

*Owen v. Bristol Care, Inc.,*
    702 F.3d 1050 (8th Cir. 2013) ............................................................... 21

*Pelton Casteel, Inc. v. NLRB,*
    627 F.2d 23 (7th Cir. 1980) ................................................................... 16

*Sperling v. Hoffman-LaRoche, Inc.,*
    493 U.S. 165 (1989) ............................................................................... 11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    130 S.Ct. 1758 (2010) ..................................................................................... 11

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2nd Cir. 2013)................................................... 11, 21, 22

*Trompler, Inc. v. NLRB*,
    338 F.3d 747 (7th Cir. 2003) ......................................................... 5, 8, 9

*Wright v. Family Dollar, Inc.*,
    No. 10-C-4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) ............................... 12

## STATUTES

28 U.S.C. § 2072(b) ........................................................................................... 10

29 U.S.C. § 102 ................................................................................................ 20

29 U.S.C. § 103 ................................................................................................ 20

29 U.S.C. § 157 ....................................................................................... 4, 18, 19

29 U.S.C. § 158(e) ............................................................................................. 20

29 U.S.C. § 159(a) ............................................................................................ 19

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 ............................................................. 1, 3, 10, 11

Federal Rule of Civil Procedure 12(f)................................................................... 12

## ARGUMENT

Plaintiff Jacob Lewis has filed suit seeking to vindicate his rights under the Fair Labor Standards Act ("FLSA") and Wisconsin's overtime law. At issue is whether he is entitled to invoke class or collective action procedures, notwithstanding that he voluntarily accepted an agreement that obligates him to seek redress for any complaints through individual arbitration.

Lewis concedes that statutory claims may be the subject of an arbitration agreement, and that neither the FLSA nor Federal Rule of Civil Procedure 23 provide him a substantive right to these procedures. (Lewis Br. at 14, 22.)[1] Thus, his argument rises or falls on the answer to the question whether an altogether different statute, the National Labor Relations Act ("NLRA"), affords him a substantive right to litigate his claims on behalf of others on a class or collective basis.

Lewis' theory is not supported by decades of authority, as he suggests, but rather is the product of recent decisions issued by a deeply divided National Labor Relations Board ("NLRB" or "Board") and roundly rejected by the federal courts. (Epic Br. at 21-30.) Section 7 of the NLRA has never been, and should not be, extended to provide a substantive legal right to invoke certain procedural mechanisms created by later-enacted statutes. Existing precedent cannot

---

[1] The following references are used throughout the Reply: "Lewis Br." refers to the Brief of Plaintiff Lewis;   "Epic Br." to the Brief of Defendant Epic Systems Corporation, and "S.A." to the required Short Appendix attached to that same brief; "NLRB Br." to the NLRB's Amicus Brief; and  "Prof. Br." to Law Scholars' Amicus Brief.

reasonably be stretched to accommodate the Board's broadside attack on arbitration agreements governing non-NLRA claims. Indeed, Lewis' position also is contradicted by the NLRA itself, which explicitly permits employees to agree to individual resolution of disagreements arising in the workplace and to waive collective rights. Accordingly, the NLRB's newly-minted position is not entitled to judicial deference.

Lewis' attempt to harmonize the reading of the NLRA and the Federal Arbitration Act ("FAA") also fails because it depends on the same flawed interpretation of the NLRA. (Lewis Br. at 6, 20.) Under the FAA's "saving clause," an agreement may be invalidated on generally applicable contract defense grounds. Because class and collective action waivers are not "illegal" as Lewis says, the FAA's saving clause does not apply. In that circumstance, the FAA controls absent a contrary Congressional command. (Epic Br. at 31-42.) No such command can be found in the NLRA, and the Court should heed the liberal federal policy favoring arbitration to compel arbitration in this case. (*Id.*)

For these reasons, as well as the reasons stated in Epic's opening brief, the Court should reverse the District Court's order and remand with instructions for the District Court to compel Lewis to arbitrate his FLSA claims on an individual basis.

## I.   THERE IS NO SUBSTANTIVE RIGHT TO PURSUE A CLASS OR COLLECTIVE ACTION

Lewis concedes that "statutory claims may be the subject of an arbitration agreement" and "federal statutes such as the FLSA . . . that allow collective action

procedures do not furnish employees with the substantive right to bring collective claims." (Lewis Br. at 14, 22.) Lewis also "does not argue that he has a substantive right to act collectively under either the FLSA or Rule 23." (*Id.* at 14.) Thus, the issue Lewis presents to the Court is whether the class and collective procedural mechanisms provided under the FLSA or Rule 23 are nonetheless elevated to substantive rights under another statute, the NLRA. The answer is no.

**A.**    The NLRA Does Not Provide A Substantive Right To Litigate On A Class Or Collective Basis Claims Arising Under Other Statutes

Lewis posits that Section 7 of the NLRA provides a "substantive right" to "represent a group of employees in a collective legal action." (Lewis Br. at 1.) His logic, and that of the *amici,* starts with the premise that Section 7 rights are not limited to traditional concerted action such as forming a union, striking, picketing, petitioning for change, and collective bargaining, and that those rights extend to filing lawsuits related to working conditions. From that premise, Lewis makes the leap that Section 7 converts what courts have unanimously held to be non-substantive, procedural mechanisms into an employee's non-waivable substantive legal right to seek to act as a class representative under Rule 23 and/or seek certification of a collective action under the FLSA and send court-authorized notice to allegedly similarly-situated current and former employees informing them of their ability to join the case. Lewis posits that this extension of Section 7 rights is an implicit "contrary congressional command" sufficient to override the FAA's requirement that arbitration agreements containing class and collective action waivers be enforced according to their terms and that the FAA's "savings clause"

3

exempts a purportedly illegal class and collective action waiver from the FAA's reach.

But Lewis' logic is flawed at every step. First, the cases on which he relies do not enshrine employees with a non-waivable right to engage in protected concerted activity in any forum they choose. Rather, all of these decisions protect employees from employer acts taken in retaliation for an employee's engagement in protected concerted activities, with the particular forum for those activities being immaterial to the outcome. Second, those cases do not make the long leap that Lewis urges this Court to make. Even accepting the initial premise that there exists a Section 7 right to bring a legal action in a concerted fashion, the cases on which Lewis relies do not stand for the exceptional proposition that Section 7 protects the resort to judicial class and collective procedures under non-NLRA statutes. Third, Lewis has failed to show he was unlawfully forced to waive his Section 7 rights and that, therefore, the arbitration agreement into which he entered should not enforced per the FAA.

1.    *Neither Section 7 Nor The Decisions Construing It Guarantee Particular Forums or Procedural Rights*

Section 7 of the NLRA permits employees to engage in, and refrain from engaging in, concerted activities, including to form, join, or assist labor organizations; bargain collectively; as well as "other concerted activities for . . . mutual aid or protection." 29 U.S.C. § 157. Lewis and the *amici* argue for an expansive interpretation of Section 7.[2] But neither Lewis nor the *amici* dispute that

---

[2] Lewis urges that "Courts must broadly interpret the actions that constitute concerted activities under Section 7." (Lewis Br. at 11, citing *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-67 (1978). *See also* NLRB Br. at 17-20; Prof. Br. at 18-19. Lewis

some actions taken by an employee, or group of employees, are *not* concerted, some concerted activities are *not* protected, and many employer actions do not infringe an employee's Section 7 entitlements.[3] A review of the cases cited by Lewis shows that the courts have never construed the NLRA to guarantee a particular judicial forum or to dictate the procedural devices available to litigants. Rather, the common thread in decisions where the courts have upheld employees' right to engage in mutual aid or protection through litigation have focused on protecting those employees from employer retaliation, not on guaranteeing that employees may proceed in a judicial forum or by particular procedural methods.

The principal case relied upon by Lewis is *Eastex*. Among other things, Lewis argues that *Eastex* supports the notion that "[b]oth the courts and the Board recognize that employees' filing of a legal complaint including a class or collective action is a 'concerted activity' under Section 7 of the NLRA." (Lewis Br. at 12.) In fact, the decision cannot be stretched as far as Lewis intends, because the concerted

---

also cites *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937) for the notion that "[e]mployees' right to engage in concerted activities under Section 7 of the NLRA is a 'fundamental right.'" (Lewis Br. at 11; *see also* NLRB Br. at 18.) But that decision pre-dated passage of the Taft-Hartley Act, which worked a material change to the language of Section 7. *See,* Section I.B, *infra.*

[3] As the Court explained in *Trompler, Inc. v. NLRB*, 338 F.3d 747, 748 (7th Cir. 2003), the term "concerted activities. . . obviously cannot be read literally, as that would have entitled the six dissatisfied workers in our case to have beaten up the supervisors or burned down the shop." *See also Eastex*, 437 U.S. at 567-68 ("at some point the relationship [between concerted activity and employee interests] becomes so attenuated that an activity cannot fairly be deemed to come within the 'mutual aid or protection' clause.").

activities at issue did not include legal action at all, much less a class or collective action.

In *Eastex*, officers of a local union sought to "strengthen employee support for the union and perhaps recruit new members . . . [by] distribut[ing] a union newsletter to petitioner's production employees." *Eastex*, 437 U.S. at 559. The newsletter included content not strictly related to the petitioner's workplace, such as statements about right to work legislation and changes to the federal minimum wage. *Id.* A union official asked for permission to distribute the newsletter to employees in nonworking areas of the petitioner's property during nonworking time. *Id.* at 560-61. When the request was refused, the union filed an unfair labor practice charge with the NLRB. *Id.* at 561. The ALJ held that distribution of the newsletter contents was concerted activity for mutual aid or protection, the Board affirmed, and, on the employer's appeal, the court of appeals enforced the order. *Id.* at 561-62.

The Supreme Court considered, among other things, whether distribution of the letter was concerted activity protected under Section 7 of the NLRA. *Id.* at 563. In approving the specific and classic case of union activity at issue—communication by union leaders with members of the bargaining unit at the plant regarding topics related to their representation and terms and conditions of employment—the Supreme Court expressed a modestly flexible approach to defining Section 7 rights:

> The 74th Congress knew well enough that labor's cause often is advanced on fronts other than collective bargaining and grievance settlements within the immediate employment context. It recognized this fact by choosing, as the language of § 7 makes clear, to protect concerted activities for the *somewhat broader* purpose of "mutual aid

or protection" as well as for the narrower purposes of "self-organization" and "collective bargaining."

*Id.* at 566 (emphasis added).

The Court mentioned employees' "resort to administrative and judicial forums," but in the context of describing venues where employees might exercise their Section 7 rights, not as an assurance that those forums would be available to employees in all circumstances:

> [I]t has been held that the "mutual aid or protection" clause protects employees from *retaliation* by their employers when they seek to improve working conditions through resort to administrative and judicial forums, and that employees' appeals to legislators to protect their interests as employees are within the scope of this clause. To hold that activity of this nature is entirely unprotected - irrespective of location or the means employed - would leave employees open to *retaliation* for much legitimate activity that could improve their lot as employees.

*Id.* at 566-67 (emphasis added).

This description of some activities employees should enjoy without fear of reprisal is a far cry from supporting Lewis's broad claims that *Eastex* "recognize[d] that employees' filing of a legal complaint including a class or collective action is a 'concerted activity' under Section 7 of the NLRA" and "the NLRA guarantees employees a substantive federal right to collective legal action." (Lewis Br. at 12, 24.) Indeed, the facts of the case did not present any occasion to opine on the availability of any particular forum or procedure, and *Eastex* has nothing to say about arbitration, waiver, the availability of class and collective action procedural devices for non-NLRA claims, or anything else relevant to Lewis' claims.

There is also no guarantee of court access or particular litigation procedural mechanisms in *NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822 (1984) (Lewis Br. at 12), which holds little more than that employees need not band together to assert Section 7 rights if the complaint finds its genesis in the terms of a collective bargaining agreement. In that case, a single employee union member refused to drive a truck that he believed to be unsafe. *Id.* at 824. The collective bargaining agreement permitted such safety objections, but the employer discharged the employee nonetheless. *Id.* at 824-25. The Board concluded that this was Section 7 concerted activity and the discharge an unfair labor practice, but the court of appeals refused to enforce the order. *Id.* at 825. The Supreme Court sided with the Board and endorsed the view that "an individual employee may be engaged in concerted activity when he acts alone" (*id.* at 831) and "[t]here is no indication that Congress intended to limit [Section 7] protection to situations in which an employee's activity and that of his fellow employees combine with one another in any particular way" (*id.* at 835). In other words, in some circumstances, such as giving life to the terms of a collective bargaining agreement, a single employee's actions may constitute "concerted" activity. However, nothing in the case speaks to an employee's right to file suit, much less to have resort to a class or collective device once before the tribunal.

This Court's decision in *Trompler* (Lewis Br. at 12) likewise illustrates that the NLRA is meant to ensure employees have the right to engage in concerted activity without fear of retaliation, but again stops well short of holding that this

8

protection extends to a guarantee of the right to proceed in a judicial forum or through class or collective procedures. The case concerned six workers who walked off the job to protest management's failure to prevent sexual harassment, deal with an employee's drug problem, or understand the operations of machines used by the workers. *Id.* at 748. The president of the company met the employees, learned the reason for their walk-out, then fired them anyway because the walk-out had been unannounced and negatively impacted production. *Id.* The employees filed a charge with the NLRB, which concluded that the workers had engaged in concerted protected activity and ordered reinstatement with backpay. The Court enforced the order and discussed the reach of employee concerted activity and employer responses, but there is nothing in the discussion that even touches upon whether the employees could have filed their claims in court, much less the procedural devices that may have been available to them.[4]

### 2. *Section 7 Does Not Go So Far As To Guarantee Access to Class And Collective Action Procedural Mechanisms*

More fundamentally, even assuming that there exists a Section 7 right to bring a legal action in a concerted fashion over a workplace dispute, it cannot be said that Congress, in enacting Section 7, chose to dictate the procedural rules governing non-NLRA statutes. This conflation between filing a legal action in a

---

[4] The same is true of other cases cited by Lewis. *See, e.g., NLRB v. United Parcel Serv., Inc.*, 677 F.2d 421 (6th Cir. 1982) (enforcing order that employer discharged employee in retaliation for employee's exercise of rights protected under the NLRA, but with no suggestion that employee was guaranteed access to the courts or particular procedures in the exercise of those rights); *NLRB v. Moss Planing Mill Co.*, 206 F.2d 557 (1953) (same) (Lewis Br. at 13).

concerted fashion and the right to specific class and collective procedures is a leap too far—and one that no appellate court and only one federal district court has thus far been willing to make, and which dozens have explicitly rejected. (Epic Br. 21-30.)

As discussed in Epic's opening brief, neither modern class actions nor FLSA collective actions existed at the time of the passage of Section 7 and thus Congress in 1935 could not have intended to create a right to them. (Epic Br. at 39-41.) Indeed, once Rule 23 went into effect in 1966 (31 years after the original enactment of the NLRA's Section 7), it was as an "*exception* to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979) (emphasis added). The class and collective action rules have themselves been held by the Supreme Court and multiple circuits to be waivable non-substantive rights under the very statutes under which they were created (the Rules Enabling Act and the FLSA). *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2309-10 (2013) ("Nor does congressional approval of Rule 23 establish an entitlement to class proceedings for vindication of statutory rights. To begin with, it is likely that such an entitlement, invalidating private arbitration agreements denying class adjudication, would be an 'abridgment' or 'modification' of a 'substantive right' forbidden to the Rules, *see* 28 U.S.C. § 2072(b). But there is no evidence of such an entitlement in any event. The Rule imposes stringent requirements for certification that in practice exclude most claims. . . One might respond, perhaps, that federal law secures a nonwaivable

*opportunity* to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class mechanism in arbitration. But we already have rejected that proposition."); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 (2nd Cir. 2013) ("Supreme Court precedents inexorably lead to the conclusion that the waiver of collective action claims is permissible in the FLSA context.").

Lewis essentially urges this Court to adopt a rule elevating certain litigation procedural mechanisms under which, in the case of a class action under Rule 23, one party purports to represent and adjudicate the interests of absent parties, subject to certain due process protections woven into that procedure; Fed. R. Civ. P. 23, and, in the case of a collective action, a party pursues collective action certification authorizing him or her to send notice to those similarly situated of the existence of the collective action and their ability to consent to join it. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2nd Cir. 2010) (describing the "two-step method" of collective action certification that "while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible. The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."); *Sperling v. Hoffman-LaRoche, Inc.*, 493 U.S. 165 (1989) (Scalia, J. dissenting) (describing the collective action notice procedures as a judge-made case management tool). Those procedures are far different than the case of employees banding together in litigation to bring their claims. *See Stolt-Nielsen*

*S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1777 (2010) (the differences between bilateral arbitration and class arbitration "resolv[ing] many disputes between hundreds or perhaps even thousands of parties" is "fundamental").

Accepting the proposal of Lewis and the NLRB that employers may not infringe on employee efforts to pursue class or collective claims in court would result in encroachment on litigation procedures with no limit. Under this theory, a defendant-employer's so-called "pick-off" of a class representative by mooting his or her claim would violate Section 7. *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523 (2013) (describing the debate over whether a payment to a class representative can moot a class or collective action). So too would a motion to dismiss or strike class allegations under Rule 12(f). *See, e.g., Wright v. Family Dollar, Inc.,* 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010). And there would be no reason why opposing a motion for class certification also would not run afoul of Section 7 under the Board's theory. They all constitute an employer action opposing the so-called collective assertion of Section 7 rights. Those actions, however, are not unlawful, and neither is an agreement between an employer and employee to not pursue collective or class action procedures.

Contrary to his contention, no precedent supports Lewis' arguments that courts "recognize that employees' filing of a legal complaint including a class or collective action is a 'concerted activity' under Section 7 of the NLRA" (Lewis Br. at 12), and even "a single employee's filing of a class or collective action on behalf of others constitutes protected 'concerted activity.'" (Lewis Br. at 13). In fact, none of

the cases reach the issue of whether there exists a substantive right to invoke class or collective action litigation procedures.

Lewis's first cite is to *Eastex* which, as noted above, says nothing whatsoever about the filing of any type of action, much less a class or collective action.

*Brady v. Nat'l Football League*, 644 F.3d 661 (8th Cir. 2011), is an animal of a different stripe; it concerns a district court's authority to enjoin a labor dispute. Nine professional football players and one prospective football player voted to terminate their union's status as collective bargaining agent, then filed an antitrust action. *Id.* at 663. The NFL locked out the players, and the district court granted the players' request for a preliminary injunction to enjoin the lockout. *Id.* On appeal, the Eighth Circuit analyzed the district court's application of the Norris-LaGuardia Act, which "curtails the authority of a district court to issue injunctions in a labor dispute." *Id.* at 669.

Lewis relies on the Eighth Circuit's statement that "a lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 of the [NLRA]" (Lewis Br. at 12, citing *Brady*, 644 F.3d at 673). A careful examination of *Brady's* dictum, however, deflates this argument. The players, arguing that the injunction restraining the NFL should remain in place, made a two-step argument: (1) the Norris-LaGuardia Act "applies only where there is 'concerted labor activity' by 'collectively organized employees'" giving rise to a "labor dispute," and (2) the union had disbanded before the injunction was requested, so the Act did not apply at all. *Id.* The court rejected the

notion that a labor dispute was even required, but suggested that if it was, the players' lawsuit would more than suffice to bring the claims within the reach of Norris-LaGuardia. *Id.* Critically to the instant case, nothing in *Brady* reaches the question whether it is lawful to contract for an arbitral rather than judicial forum, or whether the NLRA creates a non-waivable, substantive legal right for employees to pursue procedural devices available in non-NLRA based litigation.

The Eighth Circuit supported its statement with citation to three cases, which Lewis cites as well (Lewis Br at 12), and each supports this contextual understanding. *Leviton Mfg. Co., Inc. v. NLRB*, 486 F.2d 686 (1st Cir. 1973), for example, presents an unusual set of facts but, critically, does not concern a class or collective action and ultimately concludes that a complaint by four employees was *not* protected concerted activity. Four employees were defeated in union elections and thereafter filed a series of meritless grievances, complaints, and Board charges complaining of discrimination by the employer or the union. *Id.* at 687. Eventually, the four filed a civil action against the employer, union, and individual officers and officials alleging a conspiracy to oust the employees from their former union positions. *Id.* at 688. The case was dismissed for lack of jurisdiction, and one week later, the employer fired all four employees. *Id.* The court concluded that filing the suit was concerted activity (*id.* at 689), but nothing in the citation says that the employees were entitled to pursue claims in court or to avail themselves of particular procedures once there. (In fact the particular activity in this case was not protected by Section 7 because of the employees' bad faith.)

Likewise, in *Altex Ready Mixed Concrete Corp. v. NLRB*, 542 F.2d 295 (1976), the Fifth Circuit concluded that two employee union members could not be discharged for participating in a strike and signing false affidavits in support of a union lawsuit to enjoin the employer conduct that precipitated the strike. *Id.* at 296. The employees were not party to the litigation and did not seek resort to class or collective procedures, and it was the employer's retaliatory action that violated the NLRA.

*Mohave Elec. Co-op., Inc. v. NLRB*, 206 F.3d 1183 (D.C. Cir. 2000), also falls short of supporting Lewis' proposition. Two employees felt physically threatened by a supervisor and owner of the employing company and, with the support of some co-workers, filed state court actions to enjoin them to stay away from the petitioners' homes and place of employment. *Id.* at 1187. The two employees were fired. *Id.* The ALJ concluded that "the filing of a judicial petition-supported by fellow employees and joined by a co-employee-constitutes concerted action under the NLRA." *Id.* at 1189. On appeal, the employer contended the petitions were filed in bad faith, but the court found ample record evidence to the contrary and enforced the Board's decision. *Id.* Once again, the decision said nothing to suggest the forum was guaranteed or that employees were entitled to invoke any particular court procedure.

The final case cited by Lewis goes again to the point addressed in Section I.A. In *Trinity Trucking & Materials Corp.*, 677 F.2d 421 (6th Cir. 1982), the court concluded that an employer had unlawfully terminated employees for filing a

lawsuit against their employer which sought compensatory and punitive damages.[5] As with the earlier cases, it is clear that the decision turned on the employer's decision to retaliate against the employees' complaint, not on the particular forum which they choose to raise the complaint in.

As expressed in the cases relied on by Lewis, courts are concerned with ensuring that employees retain the right to act for mutual aid or protection without suffering retaliation, including when employees present their grievances in court. But none of the decisions vest employees with the substantive legal right to proceed in a particular forum for those claims, much less with a substantive legal right to pursue those claims through an otherwise waivable procedural mechanism. Because no such substantive legal rights exist, Lewis must be compelled to arbitrate his claims on an individual basis as the Arbitration Agreement requires.

3.    *Lewis Was Not Unlawfully Forced To Waive His Section 7 Rights*

Nothing in the record suggests that the instant case fits within the confines of the case holdings described above. Lewis was not forced to agree to the Mutual Arbitration Agreement Regarding Wages and Hours issued by Epic.[6] Neither the announcement nor the Agreement states that acquiescence is required for continued

---

[5] Lewis also cites *Pelton Casteel, Inc. v. NLRB*, 627 F.2d 23 (7th Cir. 1980) (Lewis Br. at 13). The decision does not address the filing of a class or collective action. Rather, the Court held that "general complaints" about wages, job rates, and overtime were not protected under Section 7. *Id.* at 28-29 (emphasis added, refusing to enforce Board order concluding employer committed unfair labor practice).

[6] The NLRB incorrectly asserts that the Agreement applies to "all work-related disputes." (NLRB Br. at 23.) In fact, the Agreement is narrowly tailored to claims related to wages and hours. (S.A. 11.)

employment (S.A. 11-13, 15-17), and Lewis never submitted evidence that he subjectively held such a belief.[7] The Agreement was sent to Lewis on April 2, 2014 at 4:13 p.m. (S.A. 15), and he responded the following day, April 3, at 9:44 a.m. that he agreed to its terms (S.A. 19).

By the time Lewis filed his lawsuit, he had voluntarily resigned his employment (S.A. 9), and Epic could not and has not taken any action against him. As the cases illustrate, courts step in to protect employees' right to go to court over employment matters when employers have retaliated against employees for engaging in that conduct. None of the cases Lewis has cited suggest that the courts are concerned with protecting the particular forum chosen by the employee or ensuring that the employee has resort to particular procedural steps in that forum, and Section 7 does not require such a result. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1077 (9th Cir. 2014) ("Having freely elected to arbitrate employment-related disputes on an individual basis, without interference from Bloomingdale's, [plaintiff] cannot claim that enforcement of the agreement violates either the Norris–LaGuardia Act or the NLRA.")

---

[7] In this respect, the instant case is not like the "two seminal decisions, *D.R. Horton* and *Murphy Oil*, [where] the Board held that an employer violates the NLRA "'when it requires employees covered by the [NLRA], *as a condition of their employment*, to sign an agreement" with a class or collective action waiver. (NLRB Br. at 2.)

**B.** The Text Of Section 7 And The History Behind Its Revision Show That The Substantive Right Protected By The Statute Is The Right To Choose Whether Or Not To Engage In Concerted Activities

The decisions issued by the courts are entirely consistent with the text of the statute. Lewis repeatedly quotes from Section 7 of the NLRA, but never in its entirety. (*See* Lewis Br. at 6, 11, 32.) The portion of the statute that Lewis ignores makes clear that employees have the right both to engage in and *refrain* from engaging in, protected concerted activity:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, *and shall also have the right to refrain from any or all of such activities* except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157 (emphasis added).

Significantly, the right to refrain from engaging in concerted activity was added by Congress to rein in a Board that had construed its mandate too broadly. "As enacted in 1935, the NLRA, which was commonly known as the Wagner Act," provided through Section 7 "that workers have the right to organize, to bargain collectively, and to engage in concerted activity for their mutual aid and protection." *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 66 (2008). Despite decisions by the Supreme Court to curtail the NLRB's "aggressive interpretation" of the statute, the Board continued to regulate employer conduct more restrictively than Congress had intended. *Id.* at 66-67. "Concerned that the Wagner Act had pushed the labor relations balance too far in favor of unions, Congress passed the Labor

Management Relations Act, 1947 (Taft–Hartley Act) . . . amend[ing] §§ 7 and 8 in several key respects." *Id.* at 67. Among other things, the Act "emphasized that employees 'have the right to refrain from any or all' § 7 activities." *Id.*, citing 29 U.S.C. § 157.

Lewis, relying on his incomplete quotation, concludes that "the core right of the NLRA" is to protect the right of employees to engage in concerted activities for the purpose of mutual aid or protection. (Lewis Br. at 11.) But Congress' deliberate inclusion of the contrary right—to also be free to *refrain* from engaging in concerted activities for the purpose of mutual aid or protection—shows that the purpose of the statute was to protect employees' right to choose.[8]

Section 9(a) of the NLRA makes the same point. Under that provision, "any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted[.]" 29 U.S.C. § 159(a). In other words, both Section 7 and 9(a) ensure an employee's right to agree to resolve claims on an individual basis and to forego the right to pursue their claims on a classwide basis, and employers do not violate the act by agreeing to individual adjustments either.

Further support for this conclusion can be found in the fact that Congress has specifically prohibited certain types of agreements, but agreements to arbitrate statutory employment-related claims are not among them. For example, with the

---

[8] Lewis cites *National Licorice Co. v. NLRB*, 309 U.S. 350 (1940) and *J.I. Case Co. v. NLRB*, 321 U.S. 332 (1944) to suggest that individual contracts of any type may not be used to avoid the NLRA. (Lewis Br. at 16.) Both cases pre-dated passage of the Taft-Hartley Act and its significant changes to Section 7.

19

Norris-LaGuardia Act in 1932, Congress prohibited any "contract or agreement [that] undertakes or promises not to join, become, or remain a member of any labor organization or of any employer organization"—so-called "yellow dog" contracts that aim to prohibit employees from joining labor unions. 29 U.S.C. § 103.[9] Likewise, Congress declared that any agreement is unenforceable if it would obligate an employer to refrain from dealing in the products of another employer or to cease doing business with another person. 29 U.S.C. § 158(e). In contrast, Congress has not enacted any prohibition against employment agreements that contain class or collective action waivers.

In sum, no basis in the statute exists to conclude that Congress intended the NLRA to guarantee a substantive right to proceed on a class or collective basis brought under any employment statute.

C.     The Board's Recent Decisions Invalidating Class And Collective Action Waivers Are Not Owed Any Deference

Lewis argues that the Court must defer to the Board's construction of the NLRA. (Lewis Br. at 17.) He is incorrect. Courts are obligated to follow a clear intent of Congress, deferring to an agency's determination only if a statute is silent or ambiguous on the precise issue and the agency's determination is a permissible

---

[9] The *amici* labor law professors read this along with Section 102 and conclude that the Act "was intended to do more than bar enforcement of contracts prohibiting union membership," and should be construed to "den[y] enforcement to a broad array of 'promises' and 'undertakings' that would bar concerted activity to improve working conditions." (Prof. Br. at 5-6.) Like Lewis, the professors quote only part of the Act. The Norris-LaGuardia Act, like Taft-Hartley, protects both the right to engage in concerted activity and the right to "be free to decline to associate with his fellows." 29 U.S.C. § 102. Only contracts restricting union participation are prohibited. 29 U.S.C. § 103.

construction of the statute. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). The Board's *Horton* rationale that would invalidate class and collective action waivers fails this standard and thus the Court should not defer. *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 356, 363 (5th Cir. 2013) (considering what deference is due the Board's interpretation of the NLRA and other statutes and agreeing with "[e]very one of our sister circuits to consider the issue. . . that they would not defer to the NLRB's rationale[.]"); *Sutherland*, 726 F.3d at 297 n. 8 (declining to grant the NLRB's *Horton* decision any deference); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013) (same).

As explained above, the NLRA is not silent on the question of whether employees may voluntarily waive their ability to litigate their claims on a class or collective basis in a judicial forum. To the contrary, Section 7 and Section 9(a) explicitly provide that employees may refrain from engaging in concerted activity and may agree with employers to their own process for resolving disputes over terms and conditions of employment. Even if the statute were not silent, the Board's *Horton* rationale must fail because it fails to take into account the statutory provisions that contradict its position.[10]

The absurdity of the Board's position is exposed by a simple comparison. Procedural rights may be waived in favor of arbitration even when they are so

---

[10] The Board is not unified on this issue. *Horton* was issued by a Board comprised of just three-members. Subsequent Board decisions extending the *Horton* rationale to other cases have prompted vigorous dissents. *See, e.g., 200 East 81st Restaurant Corp.*, 362 NLRB No. 152 (2015); *Fresh & Easy Neighborhood Market*, 361 NLRB No. 12 (2014); *Murphy Oil USA, Inc.*, 361 NLRB No. 72 (2014).

significant that they are embedded in the Constitution. The right to a jury trial is one such example. This right is granted by the Seventh Amendment and is further bolstered by certain federal statutes, including Title VII and the Age Discrimination in Employment Act ("ADEA"). Notwithstanding the sanctity of this right, in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991), an ADEA case, the Supreme Court ordered arbitration, which had the effect of denying the plaintiff the opportunity to present his case to a jury.

If even fundamental constitutional protections may be waived for arbitration, there is no basis to conclude that a matter of significantly lower import—the use of class and collective action procedures—warrants voiding an otherwise valid arbitration agreement. Section 7 is not more powerful than the Seventh Amendment.[11]

## II.   THERE IS NO CONTRARY CONGRESSIONAL COMMAND THAT OVERCOMES THE PREEMINENCE OF THE FAA

According to Lewis, the FAA and NLRA can be harmonized by resort to the FAA's saving clause, which invalidates an arbitration agreement that includes an illegal term. (Lewis Br. at 7.) As shown above, the class and collective action waiver

---

[11] Further, there is no basis to conclude that Section 7 rights—especially when stretched to cover an employee's right to pursue a class or collective action procedure—are any more important than other federal statutory right created by Congress. There are important policies and protections grounded in the Sherman and Clayton Acts (*Italian Colors*, 133 S.Ct. at 2304); Credit Repair Organizations Act (*CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665 (2012)); ADEA (*Gilmer,* 500 U.S. at 32); and even the FLSA (*Sutherland*, 725 F.3d at 290). Lewis' and the Board's argument implicitly asks this Court to elevate Section 7 of the NLRA to a higher plane than those statutes, which the Supreme Court and courts of appeals have concluded are no bar to the waiver of the right to proceed on a class or collective basis.

in the Arbitration Agreement between Epic and Lewis is not "illegal" under the NLRA, so the FAA's saving clause does not apply.[12] *See Horton*, 737 F.3d at 359 ("the Board's rule does not fit within the FAA's saving clause.").

As a result, absent a "contrary congressional command," the instant case is governed by the FAA and not the NLRA. *Italian Colors*, 133 S. Ct. at, 2309. As demonstrated in Epic's opening brief (at 31-42) and above, nothing in the statutory text or legislative history of the NLRA establishes that Section 7 creates a substantive right for employees to initiate class actions, whether in arbitration or court, or provides for the override of arbitration agreements limiting class actions. Congress did not intend Section 7 to authorize the Board to override otherwise lawful arbitration agreements generally, or to guarantee employees the unwaivable right to file class actions against their employers. Thus, Section 7 cannot override the FAA. *Horton*, 737 F.3d at 360 (no contrary Congressional command in NLRA to override FAA).

Nothing in the NLRA dictates any particular procedures governing Section 7 claims. Furthermore, there is nothing inherently antagonistic between the purposes of the NLRA and arbitration. To the contrary, arbitration is fundamental to federal labor law and embedded within the NLRA. (Lewis Br. at 42.)

---

[12] It is questionable whether "illegality" is even an appropriate grounds under the savings clause to excuse enforcement of an arbitration agreement. As the Supreme Court has noted "every specific contract defense that the Court has acknowledged is applicable under § 2 relates to contract formation." *AT&T Mobility LLC v. Concepcion,* 131 S.Ct. 1740, 1752 n. 8 (2011).

**III.   THERE IS AMPLE BASIS IN THE RECORD TO DECIDE THAT THE ARBITRATION AGREEMENT WAS SUPPORTED BY CONSIDERATION AND IS NOT UNCONSCIONABLE**

Lewis submits a single paragraph requesting that if Epic prevails on this appeal, the Court remand to the District Court to reconsider his alternative argument that the Arbitration Agreement was not supported by consideration or was unconscionable. (Lewis Br. at 43.)

This Court "review[s] *de novo* a district court's grant or denial of a motion to compel arbitration." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032-33 (7th Cir. 2012). Epic explained in its opening brief that the Arbitration Agreement is a valid agreement supported by ample consideration as a matter of law. (Epic Br. at 17-18.) If Lewis believed there are alternative grounds to affirm the decision below, he had ample opportunity to present his arguments to the Court, yet he declined to do so.[13] Lewis' arguments in this regard, and Epic's rebuttals, are available in the District Court record, should the Court wish to consider them. (R. 42, 47.)

An order remanding to the District Court with instructions to consider Lewis' arguments regarding consideration and unconscionability would further delay the proceedings. This would frustrate the purpose of the FAA, which instructs courts to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Accordingly, the Court should reverse and remand with

---

[13] Lewis did not decline to make these arguments due to the Court's 14,000 word limit. FRAP 32(a)(7)(B). His brief contained 11,845 words. (Lewis Br. at 45.)

instructions to the District Court to enter an order compelling arbitration of Lewis' claims.

<u>CONCLUSION</u>

Lewis and Epic are parties to a valid arbitration agreement that encompasses the issues raised in Lewis' Complaint. The FAA controls the interpretation of the Arbitration Agreement and mandates that it be enforced according to its terms, including that Lewis arbitrate his claims on an individual basis. The District Court's decision misconstrues the NLRA and is contrary to the overwhelming weight of authority, and the decision should be reversed by this Court.

**Dated**: January 8, 2016

/s/ Noah A. Finkel
Noah A. Finkel
Andrew L. Scroggins
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)
nfinkel@seyfarth.com
ascroggins@seyfarth.com

*Counsel for Defendant-Appellant*
*Epic Systems Corporation*

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(A)(7)(B)</u>

The undersigned, counsel of record for Defendant-Appellant Epic Systems Corporation, furnishes the following in compliance with FRAP Rule 32(a)(7)(B):

I hereby certify that this Brief conforms to the rules contained in FRAP Rule 32(a)(7)(B). This brief was prepared in Century, using 12 point type in the body and footnotes, prepared using Microsoft Word. The referenced word processing system indicates a total word count of 6,998 words, beginning at page "1," as authorized and determined under FRAP Rule 32(a)(7)(B).

**Dated**: January 8, 2016

/s/ Noah A. Finkel
Noah A. Finkel
Andrew L. Scroggins
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)
nfinkel@seyfarth.com
ascroggins@seyfarth.com

*Counsel for Defendant-Appellant*
*Epic Systems Corporation*

## PROOF OF SERVICE

The undersigned, counsel for Defendant-Appellant, hereby certifies that on January 8, 2016, the Reply Brief of Appellant Epic Systems Corporation was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. The following participants in the case are registered CM/ECF users and will be served by the CM/ECF system:

William Parsons
Hawks Quindel, S.C.
222 W. Washington Ave., Ste. 450
Madison, Wisconsin 53701-2155

Daniel A. Rottier
Habush Habush & Rottier, S.C.
150 E. Gilman St., Ste. 2000
Madison, Wisconsin 53701


**Dated**: January 8, 2016

/s/ Noah A. Finkel
Noah A. Finkel
Andrew L. Scroggins
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)
nfinkel@seyfarth.com
ascroggins@seyfarth.com

*Counsel for Defendant-Appellant*
*Epic Systems Corporation*

27

23274423v.3